PEARL (UNITED STATES v.). See Case No. 16,022.

## Case No. 10,877.

PEARPOINT et al. v. GRAHAM.

[4 Wash. C. C. 232.] [1]

Circuit Court, D. Pennsylvania. April Term, 1818.

ASSIGNMENT FOR BENEFIT OF CREDITORS — BY PARTNER — FRAUDULENT ASSIGNMENT—SCHEDULE OF PROPERTY—PREFERENCES—RELEASE.

1. How far one partner may dispose of or assign away the partnership property and effects? Quære, if he can assign away the whole without the assent of his partner, and what is evidence of such assent.

[Cited in Bowen v. Clark, Case No. 1,721.]

[Cited in Dana v. Lull, 17 Vt. 394; Deckard v. Case, 5 Watts. 24; Egberts v. Wood, 3 Paige, 524; Hannaman v. Karrick (Utah) 33 Pac. 1042; Howell v. Harvey, 5 Ark. 270; Kirby v. Ingersoll, 1 Doug. (Mich.) 485; Steinhart v. Fyhrie (Mont.) 6 Pac. 372.]

2. An assignment by a debtor of all his effects, for the benefit of such of his creditors as should release their debts in sixty days from the date of the assignment. In what case it would be, and in what cases it would not be fraudulent.

[Cited in Halsey v. Fairbanks, Case No. 5,-964; The Watchman, Id. 17,251; Brashear v. West, 7 Pet. (32 U. S.) 615.]

[Cited in Atkinson v. Jordan, 5 Ohio, 297; Grover v. Wakeman, 11 Wend. 200, 209.]

3. Such an assignment would not be fraudulent merely for want of a schedule of the property assigned.

4. A debtor who is insolvent, may prefer one creditor to another.

[Cited in Ashby v. Steere, Case No. 576; Marsh v. Bennett, Id. 9,110.]

[Cited in Gordon v. Cannon, 18 Grat. (Va.) 404; Howell v. Edgar, 3 Scam. 421. Cited in brief in Skipwith v. Cunningham, 8 Leigh, 278.]

5. The offer to release, made by a creditor to the trustee, under an assignment for the benefit of such creditors who should release within a particular time, the trustee having undertaken to prepare and have ready a release, and who failed so to do, is not sufficient to entitle the creditor who did not execute the release, to come in under the trust.

[Cited in Collier v. Davis, 47 Ark. 344, 1 S. W. 686; Armstrong v. Hurst (S. C.) 18 S. E. 153. Cited in brief in Grant v. Levan, 4 Pa. St. 426.]

6. Acceptance of the trust by the trustee, who was also a creditor, will not entitle him to the benefit of the trust, if he has failed to execute the release in time.

[Cited in National Union Bank v. Copeland, 141 Mass. 266, 4 N. E. 795.]

7. The day on which the assignment was made, is to be excluded. The general rule as to "from the date," and "from the day of the date," stated.

[Cited in Barber v. Chandler, 17 Pa. St. 50. Cited in brief in Kimm v. Osgood's Adm'r, 19 Mo. 60; Lebus v. Wayne Ratterman Co. (Ky.) 21 S. W. 652. Cited in State v. Mounts, 36 W. Va. 190, 14 S. E. 410. Cited in brief in Taylor v. Jacoby, 2 Pa. St. 496. Disapproved in Warren v. Slade, 23 Mich. 5. Cited in Weeks v. Hull, 19 Conn. 379, 382; Knowlton v. Culver, 2 Pin. 246, 1 Chand. 214.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the supreme court of the United States, under the supervision of Richard Peters, Jr., Esq.]

8. If any of the creditors release on the sixty-first day, the preceding day falling on Sunday, he is too late. He should have released on the sixtieth, or on some prior day.

[Cited in Shefer v. Magone, 47 Fed. 873.]

[Cited in brief in Page v. Weymouth, 47 Me. 241.]

9. Preparing a deed of release before the expiration of the sixty days, is not sufficient; if it was not executed within the limited time.

In equity.

WASHINGTON, Circuit Justice. This is a suit in equity brought by Pearpoint and Lord, to recover a debt due to them by Stephens & Co. out of the estate of that company, in the hands of Peter Graham, their trustee. Previous to the assignment made to Graham, Horatio Bigelow of Philadelphia, and Robert Stephens, Jr., of Charleston in South Carolina, were co-partners in trade, under the firm of Stephens & Co. in Philadelphia, and that of Robert Stephens, Jr., & Co. in Charleston; and on the 10th of April, 1816, Bigelow, at Philadelphia, executed an instrument, not under seal, in the name of Stephens, & Co. by which he assigned to Peter Graham all the estate of every kind of the said Horatio Bigelow and Robert Stephens, Jr., in their said co-partnership under both firms, in trust for each and every of the creditors of the said Bigelow and Stephens in their said co-partnership under either of their firms, who should, within sixty days from the date of the said instrument, execute, in favour of the said Horatio Bigelow and Robert Stephens, Jr., a full and complete release of all demands, the amount of their several and respective debts, if the said estate should be sufficient to pay the said creditors, in full: but if not sufficient to pay them in full, then so much of the said debts as the said estate should be sufficient to pay, the same being divided rateably among all such creditors as should have executed such release, according to the amount of their respective debts; and after payment of the said debts in full, to pay over the surplus of the said estate, if any should remain, to the said H. Bigelow and Robert Stephens, Jr. On the 24th of the same month and year, Robert Stephens, Jr., at Charleston, by an instrument under seal, signed in his separate name, but professing, in the body of the instrument, to be made by Robert Stephens, Jr., and Horatio Bigelow, trading under the firm of Robert Stephens, Jr., & Co. in Charleston, assigned to Depeau, Dun & Co. agents for Peter Graham of Philadelphia, assignee of Stephens & Co. certain specified effects for the general benefit of all the creditors of Stephens & Co. and Robert Stephens, Jr.. & Co. On the 8th of June, 1816, the plaintiffs, by an instrument reciting the assignment of the 10th of April, executed by Stephens & Co. gave a general release of all demands against the said Horatio Bigelow and Robert Stephens, Jr. On the 10th of the same month and year, Peter Graham, Renault, and other creditors of Stephens & Co. by a deed reciting the assignment of the 10th of April, and referring also to the assignment of the 24th of April, released all their several and respective demands against the said H. Bigelow and Robert Stephens, Jr. Peter Graham, the trustee, by a notice published in one of the gazettes of this city, informed the creditors of Stephens & Co. that an instrument of release would be prepared, to be executed by such of the creditors as were willing to avail themselves of the benefit of the assignment. In consequence of which —— Bettle, one of the creditors, prior to the expiration of the sixty days, called at the counting house of Graham, and offered to execute the release; but he was informed that the instrument was not then prepared; and it is not pretended that this offer was repeated, or that he, at any time afterwards, executed a release. The release of Graham, the trustee, Renault, and of others of the creditors, which bears date the 10th of June, and was in fact executed on that day, was drawn at their request on the 8th of the same month, and was then ready for execution.

Upon this state of the case, the following points have been raised in opposition to the claim of the plaintiffs to be paid their debt in full, by the other creditors of Stephens & Co.; (1) That the assignment of the 10th of April is void. First, because one partner cannot dispose of the whole of the partnership effects, and thus by his own act dissolve the partnership, contrary to the terms of the association, without the assent of his co-partners. And secondly, because an assignment by a debtor of all his effects for the benefit of his creditors, upon a condition which they may at their election accept or reject, is fraudulent and void. (2) If the assignment should be considered as valid, it is then contended, that it should be construed to be for the benefit of all the creditors, whether they released within the sixty days or not. (3) If this construction should not prevail, it is still contended by the counsel for Bettle, that his offer to release, before the expiration of the sixty days, was tantamount to a release duly executed; and by the counsel for Graham that his acceptance of the trust amounted to an agreement to accede to the conditions of it, so far as his individual claim as a creditor was concerned. (4) That the release by Graham, Renault, and others, was executed within the sixty days, and that at all events, the order given on the 8th of June for the draft of the release was tantamount to an agreement to release, and was binding on them.

1. The first reason assigned why this deed should be declared to be void, was enforced with great power by the counsel for the general creditors. It is undoubtedly true, that each partner is possessed, not only of his own share and interest in the partnership effects, but of the whole; and therefore he has a power to dispose of the whole to third

persons, who deal with him in relation to the partnership concerns. Without such a power, the trade of co-partners could not be carried on, and it consequently becomes of necessity incorporated into the nature and being of such an association. But it may admit of serious doubt whether one partner can, without the consent of his associates, assign the whole of the partnership effects, (otherwise than in the course of the trade in which the firm is engaged) in such manner as to terminate the partnership. An assignment of all the effects to trustees for the benefit of the creditors of the concern, would seem emphatically to be of this character. Such is its obvious design, and such must be its necessary consequence. Now it is perfectly clear, that one partner can not, by withdrawing himself from the association before the period stipulated between the partners for its continuance, either dissolve the partnership, or extricate himself from the responsibilities of a partner, either in respect to his associates, or to third persons; and if this be so, it would seem that he could not produce the same consequence by any other voluntary act of his own. This is not like those cases where, by the act of God, or by the operation of law, the partnership is dissolved, as by the death or bankruptcy of a partner.

It is unnecessary, however, to pursue the further consideration of this question; nor is it my intention to express any opinion upon it; because I am of opinion that the assignment of the 10th of April. 1816 is to be considered as the act of the firm, performed by Bigelow, either with the knowledge and assent of his partner, or with his subsequent approbation. The assignment executed by Robert Stephens, of the 24th of the same month, to the same trustee, for the same purposes, and with a full knowledge of the first assignment, as acknowledged in the instrument itself, amounts, in my opinion, to a full ratification of the assignment made by his partner. If the two instruments are consistent with each other, it seemed to be acknowledged by the counsel for the general creditors, that the latter may be considered as a ratification of the former. Now, I am of opinion, that no two instruments can more entirely harmonise with each other than these. Both of them are intended to provide for the creditors, and there are strong reasons for believing that both embrace all the partnership effects, although some difference of opinion as to this was expressed by the counsel. But if even the latter should be less comprehensive than the former, the only consequence would be, that the former would operate upon the whole, and the latter upon the specified parts; but they would not necessarily be in opposition to each other. The first assignment is made for the benefit of such of the creditors as should, within the sixty days, execute releases; after the expiration of that time, the property not appropriated to the use of the creditors who had

released, would have resulted to the co-partners, and become subject to the claims of the creditors who did not choose to release; the second assignment then disposes of such resulting interest to the same trustee, for the equal benefit of such creditors. I do not therefore agree with the counsel, who argued that the first assignment having disposed of all the partnership effects, the second was void, having nothing to operate upon; because I think the two instruments may well stand together. Besides, who is it that makes the objection to the validity of the first assignment? Not the partners, or either of them; but the general creditors, who, in relation to this matter, cannot, I think, be heard.

The second reason assigned against the validity of the first assignment is, that being made upon a condition which the creditors might or might not comply with, it is fraudulent and void as to all the creditors of the latter description; because, unless the condition was agreed to by the creditors, and until it was, the property was vested in a trustee without a consideration paid by him, and the resulting equitable interest still remained in the debtors; and yet, during the whole of this interval, the property is attempted to be withdrawn from the just claims of the creditors. That an assignment in trust for the benefit of such creditors as should release their debts, is founded upon a good and valuable consideration, is undeniable; and the only remaining inquiry is, whether it is bona fide? It is easy to imagine cases in which the fairness of such an assignment might be justly questioned. Suppose for instance no time is limited; or a very distant period named, within which the condition may be complied with. The creditors may not choose to accede to the condition, and they are clearly under no obligation to do so. Is the estate to remain to an indefinite period in this situation, sheltered from the claims of the creditors, and in the mean time enjoyed by a mere volunteer, not the choice of the creditors, and who may waste and convert it in such a manner as ultimately to defeat or impair the rights of the creditors? I know of no case which goes as far as this; and, upon principle, I should feel strongly disposed to consider such a case as tainted with fraud. In the case of Butler v. Rhodes, 1 Esp. 236, the assignment was made in trust for the creditors who had then agreed to the proposed composition, of whom the plaintiff was one; and the only point decided was, that the debtor, having been induced by the agreement of the plaintiff to receive the composition, to part with all his property for the benefit of his creditors, he should not be permitted to retract, and to impeach the assignment. In that case, it will be observed, that the assignment was not only absolute, but was made with the assent of the creditors, and of the particular creditor who was plaintiff in the suit, in derogation of his own

agreement. Lippincott v. Barker, 2 Bin. 174, was the case of an assignment by surety, who was unable to pay his debts, to one of his creditors, of all his estate, in trust for such of his creditors as should, within four months from the date, execute a general release of all demands against him, to be distributed ratably amongst them, and the residue, if any, to himself. Two days after the execution of the deed, the creditors were called together, and all of them but one or two met, and assented to the assignment; in consequence of which the debtor gave possession of the property assigned to the trustee. The plaintiff was one of the assenting creditors, and the court decided that the plaintiff was bound by his assent to the assignment, and could not be permitted to act in opposition to it. In the opinion delivered by the chief justice, he notices, with approbation, the case from 1 Esp., and observes that he can see no good reason why the creditors should not be entitled to the benefit of the assignment from the time they agreed to accept it.

Upon this case, I observe, that some months were allowed for the creditors to accept the assignment upon the terms which it prescribed; and that two days elapsed before it was accepted by parol, and eight before the releases were in fact executed. If the condition of executing releases is, per se, an evidence of fraud, then the deed was void as soon as it was made; and the subsequent acquiescence and compliance with the terms of the assignment, by a part of the creditors, could not give it validity. This case then proceeds upon the ground that the assignment was valid, notwithstanding the conditions. In the case of Hatch v. Smith, 5 Mass. 42, the same condition of a release by the creditors was imposed; and no time was prescribed within which it was to be performed; but nearly all the creditors signed the conveyance, as the evidence of their assent, before it was executed by the debtor; and, consequently, it is precisely the same case in principle with that of Butler and Rhodes. But where a reasonable time is limited, within which the trust property is to vest in those for whom the beneficial interest is intended, or will be relieved from the operation of the assignment, I can perceive no reason for imputing fraud to such a transaction. It is true that during that period the property is, or may be, protected from the claims of creditors; but it is so protected for the benefit of those very creditors, and consequently for an honest purpose. It cannot, in short, be said to be made with intention to defraud, or to delay creditors, when its professed object is to put it in the power of the creditors to accept, or to reject, the benefit intended them; and, in the latter case, to leave the property subject to their rights, in like manner as it would have been, had the assignment not been made. What should be considered as a reasonable time for the performance of the

condition, would, in general, depend upon the circumstances of the case. But the fair object of the limitation being to afford an opportunity to the creditors to accept or to reject the terms on which the trust is created, the time should not exceed what may be thought necessary for that purpose. In the case of Lippincott v. Barker, the time limited was four months. In this it is only about the half of it. I did not understand the counsel for the general creditors to object to the validity of this assignment, upon the ground of its giving a preference to the creditors who should release, or for the want of a schedule. It will be sufficient therefore to observe, that one creditor may legally obtain a preference over the other creditors upon general principles of law; and that all the cases which deny this right, proceed upon the spirit of the bankrupt laws, which contemplate an equal distribution of the bankrupt's estate, and of which he cannot deprive them by an assignment made in favour of a preferred creditor, upon the eve of a bankruptcy. As to the want of a schedule, it may be admitted that an assignment of all the debtor's effects, without a specification of property, is, generally speaking, an indicium of fraud, but nothing more. In Twyne's Case [3 Coke, 80], it was an item in the list of circumstances to establish the fraudulent intent. But if the assignment be made for a valuable consideration, if possession accompanies the transfer, and the transaction is in all other respects fair, I do not understand that the mere circumstance of a want of a schedule will render it fraudulent.

2. The argument under this head I understand to be, that the assignment of the 10th of April ought to be so construed as to include all the creditors, as well those who declined to exercise releases within, or subsequent to the expiration of the sixty days, as those who complied literally with the prescribed condition. I have examined this instrument with great attention, and with the best disposition to give effect to this construction, if the words would bear it. But to my apprehension this is impossible. The creditors, for whose benefit the assignment is made, are described to be such as should execute, in favour of Bigelow and Stephens, a release within sixty days from the date of the assignment, and that the distribution of the effects is to be made rateably among all such creditors as should have executed such release. All those creditors then who declined making such releases within the time prescribed, are clearly without the provisions of the assignment; and if all the creditors had declined to accept the assignment upon the prescribed terms, it is most obvious that it would have been inoperative as to them after the expiration of the sixty days.

3. I now come to the examination of the particular claims of those creditors who did not execute releases within the prescribed period, but who indicated an intention to do

so. First, as to Bettle. He offered to execute a release within the sixty days, in the way pointed out by the trustee, but was informed by him that the instrument was not prepared. This offer, it is contended by the counsel for this creditor, was equivalent to performance; and, in support of this argument, the case of Lippincott vs. Barker, as also the general principles of law are relied upon. Upon neither of these grounds can this argument be sustained. As to the first, it will be sufficient to observe, that the creditor who was decided by the court to be bound by his agreement to accept of the proffered composition, did so before possession of the assigned effects was delivered to the trustee; and they were properly held to be bound by their agreement, made for a valuable consideration, which passed at the time from the debtor, although that agreement was only by parol. But in this case, Bettle was no party to the contract between the debtor and the trustee, and had entered into no engagement which could be construed into a consideration for the assignment. It was perfectly voluntary with him, whether he would accede to the terms of the assignment or not; and his offer to do so, being made without consideration, he was at all times at liberty to abandon it if he thought proper. If therefore he was not bound by the offer, it is most obvious that the other party to the contract was not bound.

The second ground taken in support of this argument, is not more tenable. The trustee had no authority to prevent any creditor directly from executing a valid release to Stephens & Co. and consequently he could not do it indirectly, by not preparing an instrument of release for the creditors to execute, or even by refusing to receive a release, if it had been tendered. The release was not to be given, or even delivered to the trustee; if regularly executed to Stephens & Co., the right of the creditor so releasing to claim his ratable proportion of the funds from the trustee was complete. The offer of the trustee to prepare a release for the creditors to execute was in his personal, and not in his fiduciary character; because the trust imposed no such duty upon him. All that he had to do was to convert the effects assigned to him into money, and to distribute the same amongst such of the creditors as should have executed releases to Stephens & Co. within the sixty days. Every thing beyond this was merely an act of supererogation, not required by his contract. The general principle of law, therefore, which considers the offer of a party who is bound by contract to perform a certain act in order to entitle himself to a benefit, or to avoid a loss dependent upon performance, as equivalent to performance, is altogether inapplicable to the case of this creditor; because, in the first place, he was under no obligation to execute this release; and, in the next, there was no refusal to accept of a release; and even if

there had been, it would not have proceeded from the persons who could be bound by the consequences of it; they were Stephens & Co. for whose benefit it was intended. The claims of Graham, Renault and others, come next to be considered. In favour of Graham, a preference is claimed by his counsel over his associates in the release of the 10th of June, upon the ground that his acceptance of the trust amounted to an agreement to accede to the conditions of it, so far as his individual claim as a creditor was concerned. To maintain this ground, it should have been shown that the acceptance of the trust deprived this creditor of the unquestioned right of election, which the other creditors had, to accept or to reject the benefit intended them by the assignment, upon the prescribed condition, and imposed upon him an absolute obligation to accept. But this is not pretended. It is clear that he was bound by nothing expressed in the contract; and as little ground is there for raising an implied contract to bind him. That he did not so consider it himself, is perfectly obvious from the release which he thought it necessary to give, after he had made up his mind to accede to the terms of the assignment. In the cases before referred to, in which the trustee, being one of the creditors, was held to be bound, he had given his assent expressly to the terms of the assignment.

4. The next question is, whether the release executed by Graham and others, of the 10th of June, entitles them to come in under the assignment? It is contended by their counsel that they are so entitled upon two grounds: (1) Because, excluding the day on which the assignment was made, the sixtieth day would have fallen on the ninth, which happening to be Sunday, that day should also be erased from the calculation, and then the sixty days terminated on the 10th of June. (2) Because the order given on the 8th of June for the draft of the release, was tantamount to an agreement to release, which was obligatory upon these creditors on that day.

As to the first reason, my opinion coincides in part with the counsel who urged it. The distinction between the expressions "the date" and "the day of the date," when used to describe a period at which an interest is to commence, or time to be computed, has long been a vexed question; and remains so in some measure at this day. The decision of the court in the case of Pugh v. Duke of Leeds, Cowp. 714, has by no means left the subject free from doubt; nor is it easy to draw from it any precise rule applicable to cases in general in which these expressions occur. The expressions used in the deed under consideration are "from the date of the said instrument;" and the first question is, whether the day of the date, is to be included or excluded? After a very laborious examination of all the cases, I think the following principles may be considered as settled.

Where the computation of time is to be made from an act done, the day on which the act is performed is included; because the act is the terminus a quo the computation is to be made; and there being in contemplation of law no fraction of a day, (unless when an inquiry as to a priority of acts done on the same day becomes necessary) the terminus is considered as commencing at the first moment of that day. Thus is the rule laid down in Clayton's Case, 5 Coke, 1, and recognized in the cases of Castle v. Burditt, 3 Term R. 623; Rex v. Adderley, Doug. 463; Bellasis v. Hester, 1 Ld. Raym. 280; Norris v. Hundred of Gautris, 2 Rolle, Abr. 520, pl. 8. The only exception to this rule, which is recollected, is established by the law merchant, which considers the day on which a bill of exchange, made payable at so many days sight is accepted, as excluded. Where the expressions are "from the date," I understand the rule to be, that if a present interest is to commence from the date, the day of the date is included; but if they are used merely to fix a terminus from which to compute time, the day is in all cases excluded. Thus a lease for so many years, habendum a datu, is of the first description, and the day of the date is included. But if the deed had been dated at a day past, and the habendum was "from the date," the day would be excluded, because no present interest passed, and the expressions were merely used for computing time. So the enrollment of a deed of bargain and sale under the statute 27 Hen. VIII. c. 16, which provides that such deeds must be enrolled within six months next after the date of the said instrument, if enrolled on the last day of the six months, excluding the day of the date. is in time. Dyer, 218, b. It is not necessary to refer to other cases as illustrations of the rule, to which I recollect no exceptions. The reason of the rule is perfectly intelligible and sensible. It is, that where words of equivocal meaning (which these are admitted to be) are made use of, and there is no index from the res gestæ to show the intention of the party who used them, the construction shall be made most advantageous for him in whose favour the instrument is made. In the case of the lease first mentioned, the day of the date is included, for the purpose of vesting in the grantee an estate in possession, rather than one in expectancy, which is most beneficial to the grantee. In the other cases, the day is excluded for the same reason; as it either prolongs the interest of the grantee, or enlarges the time in which he is required to do an act. This reason, it must be admitted, does not apply to a bill of exchange made payable so many days after date, where the day is excluded, though to the disadvantage of the person in whose favour it is drawn; but this case, like that before noticed, depends upon the custom of merchants; and though it is not within the reason of the rule, it is nevertheless within the rule itself, the date being referred to merely to denote the period from which the time of payment is to be computed. For these reasons I am of opinion that the day on which this deed was made is to be excluded. The next question under this head is, whether excluding the day of the date, the release being executed on the tenth, was not too late: and the opinion of the court is that it was. It is contended in support of this release, that the sixtieth day falling upon a Sunday, the release might properly be executed on the tenth, the ninth being excluded in the computation of time. I cannot accede to the idea that this day is to be excluded. No case was cited by the counsel, and I have met with none to warrant this position. There can be no question but that the release would have been valid had it been executed on the ninth, although it was Sunday; and the most that can be contended for is, that they were not bound to execute it on that day. But they had the whole sixty days in which they might have executed it; and it was therefore incumbent on them to do it at some time within that period, when it would have been proper for them to do it. The execution of the release was a condition precedent, and required a rigid performance. It might have been executed at any time before the expiration of the sixty days; but an execution after the expiration of that time is dehors the contract, and can upon no principle be said to be a performance of the condition, upon which alone they could claim any benefit under the assignment.

As to the second reason, it may be sufficient to observe that the opinion in relation to Bettle's claim is, if correct, conclusive against these claimants. They had not even offered by parol to execute a release, and were under no obligation to do it at any time in consequence of their order to the scrivener to prepare an instrument for them to execute.

Upon the whole. it is the opinion of the court that the plaintiffs are entitled to a decree for the amount claimed by them, the correctness of which amount is not disputed.

Decree accordingly.