# WAGENHURST *v.* WINELAND.

---

EQUITY PLEADING AND PRACTICE; EQUITABLE ASSIGNMENT; PARTNERSHIP; PRIORITIES; INNOCENT PURCHASERS FOR VALUE.

1. Where a cause in equity is set down for hearing by the complainant on bill and answers, all of the averments of the answer, responsive to the allegations of the bill, are admitted to be true.

2. Where, in a suit in equity set down for hearing by the complainant on bill and answer, it appeared that the complainant asserted title to certain funds in the hands of the Treasurer of the United States, being ten per cent retention or guarantee funds arising under contracts between a certain firm of contractors and the District of Columbia for public work, the complainant claiming that the firm's interest in the funds had, after its dissolution, been assigned to the complainant by one of the partners, as settling partner, "predicated of a valuable and adequate consideration" but not stating of what the consideration consisted, or any circumstances showing the *bona fides* of the transaction, while the defendant claimed to be entitled to the fund by reason of prior assignments from the partners, the complainant's particular contention being that, as he had recorded and given notice of his assignment to the Treasurer of the United States he, the complain-

ant, had a superior right to the defendants who had not recorded their assignments or given notice to the Treasurer of them; it was *held* that, even if it was to be assumed that the complainant's assignor had authority after dissolution, to make the assignment in the firm's name, the burden of proof was upon the complainant to prove that he was a *bona fide* assignee for value without notice of the prior assignments, and the allegations of his bill were insufficient to so show, especially as they were denied in the answers; and his bill was dismissed.

No. 1154.  Submitted April 10, 1902.  Decided May 7, 1902.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia in a suit in equity to determine the right of the complainants to certain funds in the hands of the Treasurer of the United States.

*Reversed.*

The COURT in the opinion stated the case as follows:

This appeal is brought into this court by Ellwood O. Wagenhurst and others, and is taken from a decree of the Supreme Court of the District of Columbia, passed in a cause wherein Elias Wineland was complainant, and the appellants were defendants. The bill was filed for the purpose of asserting title to, and having decreed to the complainant an alleged right to, certain funds in the control of the treasurer of the United States and as *ex officio* commissioner of the sinking fund of the District of Columbia. The funds thus claimed by the complainant are the 10 per cent retention or guarantee funds arising under two separate contracts entered into by the firm of R. M. Moore & Co. with the District of Columbia, for the construction of sewers. They are numbered, respectively, 2361 and 2390; and the guarantee funds retained, as directed by the act of Congress of June 11, 1878 (20 Stat. 106), are $1,517.37 on contract No. 2361; and on contract No. 2390, the sum of $1,609.31, subject to some small deductions.

The bill was filed originally against the defendant Wagenhurst, and Ellis H. Roberts, treasurer and commissioner,

but finding that the bill was fatally defective for want of proper parties, leave was obtained to amend the bill; and an amended bill was filed, whereby Reyburn and Little were made parties defendants, as prior assignees of the fund; and after answers filed, the complainant joined issue by filing the general replication, and thereupon set the case down for hearing, upon bill and answers; and, consequently, no evidence was taken.

It appears from the allegations made, that Robert M. Moore and one of the appellants, Ellwood O. Wagenhurst, formed a co-partnership, under the firm name and style of R. M. Moore & Co., for the purpose of procuring and executing contracts for public works, such as sewers, and the like, in the District of Columbia. That they, as such partners, entered into two separate contracts with the Commissioners of the District of Columbia, for the construction of sewers in the city of Washington; the first of which, being No. 2361, was entered into on October 20, 1896, and the second of which, being No. 2390, was entered into on May 19, 1897. The first of these contracts, No. 2361, was completed on June 2, 1897, and the second contract was completed on May 11, 1898. That, by the terms of the contracts, and in accordance with the provision of the statute, 10 per cent of each payment for work done was retained as security and as a guarantee fund to keep the work in repair for five years from the completion of the contracts. The sums thus retained were turned over by the commissioners of the District to the treasurer of the United States and *ex officio* commissioner of the sinking fund of the District, as required by the statute. These funds have been, and still remain, invested by the said treasurer and commissioner, with the consent of the contractors, in interest-bearing bonds, to the extent of $3,077.81; there being a small balance of $26.37, still remaining uninvested. The investments were all made prior to December 21, 1898.

It further appears, by the allegations in pleading, that the co-partnership of R. M. Moore & Co. was dissolved, on the 11th day of September, 1897, at the instance of Wagen-

hurst, who sold out his interest therein; but that contract No. 2361 had been completed about three months before such dissolution, though contract No. 2390 was not completed until May 11, 1898, about eight months after the dissolution. Wagenhurst was concerned in the execution of the latter contract only four months of the time within which it was to be completed, before the partnership was dissolved, and, consequently, he was really interested in the 10 per cent retained fund, under that contract, down to the time of the dissolution of the partnership, amounting only to about $376.90 of the payments made to that time; but the whole amount retained under that contract was $1,609.31, as we have before stated.

It is alleged that when Moore and Wagenhurst, in September, 1896, entered into partnership to take contracts for work for the District of Columbia, neither of them had a cent of capital with which to carry on such work, but they had arranged for a loan of $1,200 or $1,500, to be made to them by John E. Reyburn, with which they commenced the work on the first contract. At the completion of the work under that contract, they were indebted to Reyburn, for money loaned by him to the firm, to enable them to carry on the work, in the sum of $4,987; and they began work under their second contract, with the proceeds of a three months' note for $2,500, indorsed by Reyburn, and discounted at bank.

It is further alleged that, in September, 1897, Wagenhurst, having determined to sever his connection with Moore, proposed either to sell his own interest, or to buy that of Moore, under the second contract. The firm needed money for its work, and Reyburn was not disposed to lend more money, or to incur further liability for them. Moore produced to Wagenhurst, John K. Little as a purchaser; and Little paid Wagenhurst $500 for his interest in the second contract. At that time the indebtedness of the firm, under the second contract, was $1,325.03, besides the $2,500 note indorsed by Reyburn. Little put up $2,500, and the District made a partial payment on the work of $1,892.47.

With this money, thus raised, all indebtedness under the second contract was paid off; and on September 11, 1897, Wagenhurst executed to Little, relating to that contract, an assignment in the following terms:

"For value received, I hereby assign, transfer, and set over unto John K. Little, his heirs, executors, administrators or assigns, all my right, title, and interest in the within contract, and all benefits and advantages to be derived therefrom." This assignment was indorsed upon the contract, and signed by Wagenhurst.

The agreement between Little and Moore, in respect to the $2,500 put up by the former, was that, by that advance or payment, Little should become the owner of all Moore's interest in the contract, and that Moore should be retained at $25 per week for his services in superintending the further prosecution of the work under the contract.

It also appears from the allegation in the pleading, and does not appear to be disputed, that, under the first contract, the firm was indebted to Reyburn in the sum of $4,987; and the 10 per cent retained, under that contract, and placed in the Treasury Department as a guarantee repair fund, as required by law, amounted to the sum of $1,517.37; and on September 20, 1897, Moore and Wagenhurst, by their joint assignment, assigned all their "right, title, and interest in the within contract (No. 2361) to John E. Reyburn." This assignment was duly signed by both Moore and Wagenhurst and acknowledged by them both before a notary public; but no notice of this assignment was given to the treasurer of the United States until August 10, 1900. Reyburn makes no claim to any portion of the money retained as the repair fund under contract No. 2390, nor does Little make any claim to any portion of the money retained under contract No. 2361.

It then appears, from the allegations in the case, that, on December 21, 1898, after the dissolution of the partnership of R. M. Moore & Co., and more than a year after both partners had assigned and disposed of their entire interest under both contracts, including the retained guarantee

funds, Moore assumed to and did sell and assign, in form at least, to Elias Wineland, the complainant, all the moneys, credits, and evidences of money retained and deposited with the treasurer of the United States, and the interest that had or would accrue thereon, under contracts Nos. 2361 and 2390. This assignment is very specific and formal in its character; it professes to be made for the nominal consideration of $10 only, is under seal, and purports to be the act and deed of " R. M. Moore & Co." At the time of the execution of this instrument, there were two powers of attorney made and formally executed to Wineland by Moore, in the name of R. M. Moore & Co., empowering Wineland to collect and receipt for the moneys retained in the treasury; there was also a bond, in the penalty of $2,000, purporting to be executed by R. M. Moore & Co., with sureties, executed and delivered to Wineland to secure the payment to him of the money retained and deposited in the treasury, under the contracts Nos. 2361 and 2390; all very formally prepared and executed. The assignment was at once recorded in the land records of the District of Columbia, and copies of the powers of attorney were sent to the treasurer of the United States to give notice of the assignment. Some interest checks were sent to Wineland after this notice, but further payment was stopped, upon notice to the treasurer from Wagenhurst, and objection to and denial of all right of Wineland in the funds.

It is shown by the bill and answers, and exhibits filed, that there is no dispute or question in regard to the dates of any of the assignments; but in regard to the junior assignment to Wineland, made after the dissolution of the partnership, and without any apparent relation of Wineland with the partnership before its dissolution, there is no ground alleged for the assignment. The circumstances under which the assignment was made, how it came to be made, and the real consideration therefor, more than the mere nominal consideration named, are not set forth in the bill; they seem to be studiously withheld from view. It is simply alleged generally that it was made upon valuable consideration with-

out notice of the prior assignments to Reyburn and Little. The complainant asserts that he has superior right and equity to the prior assignees, Reyburn and Little, upon the ground that, although he is a subsequent assignee, he is an innocent purchaser for value without notice, and because he gave notice of the assignment to him (to Roberts the treasurer, and *ex officio* commissioner of the sinking fund of the District of Columbia). This is the foundation of the claim for relief set up in the bill of the complainant; and if this be not well sustained, he has no claim for relief as against the defendants, Reyburn and Little, who are unquestionably *bona fide* assignees.

*Mr. J. Altheus Johnson* and *Mr. Ellwood O. Wagenhurst* for the appellants.

*Mr. Thomas M. Fields* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

As we have already stated, there was no testimony taken. The complainant, after interposing the general replication to the answers of the defendants, thus joining issue thereon, upon his own motion, set the case down for hearing on bill and answers filed. All the averments, therefore, in the answers, responsive to the allegations in the bill, are to be taken as true; as by setting the case down for hearing on bill and answer, the defendants are not offered an opportunity of proving their responsive averments, and the complainant is not entitled to rely upon the unsupported allegations of his bill to make out his case.

Conceding then, as has been done by the complainant, that the partnership between Moore and Wagenhurst for the construction of the sewers under the contracts Nos. 2361 and 2390, had been dissolved, and that prior assignments of the money retained under those contracts had been made to Reyburn and Little by Moore and Wagenhurst, the

*onus* of proof in making out a clear and unmistakable case of a subsequent *bona fide* purchaser for value, without notice, is upon the complainant — his claim to relief being founded upon that contention. Has he made out the case to entitle him to relief, as the facts are presented for consideration? We think, clearly not.

Upon the hearing below the court passed a decree dismissing the bill; but, upon petition and reconsideration, that decree was vacated, and a decree was passed instead thereof, giving full relief to the complainant. It is from this latter decree that this appeal is taken.

The partnership, as we have stated, is admitted by the pleading to have been dissolved on the 11th of September, 1897. This dissolution, however, did not exonerate the partners from the obligation imposed upon them, by the contracts and bonds made for the faithful performance of the work to be done under the contracts. The partners were not only obligated to construct the sewers, with respect to which the contracts were made, but bound to keep them in good repair for a term of five years from the date of their completion. Act of Congress of June 11, 1878. In addition to the bonds given, as required by the statute, for the faithful performance of the work, a retention from the payments made, under the contract, of 10 per cent of the amount, is required to be made as an additional security, and to constitute a guarantee fund to keep the work in repair for five years; and which fund is required to be invested in interest-bearing bonds, etc., and the interest that may accrue on such fund so invested is required to be paid to the contractors. This guarantee fund for repair cannot be withdrawn or impaired by the dissolution of partnership of the contractors, nor can the security afforded by it be affected by assignment of the contractors. The dissolution of partnership may be effectual as between the partners themselves, and those who deal with them after such dissolution, but it can have no effect upon the *status* of the fund while it remains in or subject to the control of the treasurer of the United States, and liable to the purposes

for which it was retained. Until the fund fully serves the
purposes of its retention and deposit, the ultimate remainder
of it, payable on the contract, is of an uncertain character;
and while such fund, so retained, may and does, in a special
sense, constitute a partnership asset, and may, as such, be
assigned, yet such fund will be subject to all the purposes
and liabilities, under the statute, for which it was retained
and set apart, notwithstanding the assignment. All as-
signees dealing in respect to the fund are bound to take
notice of the contract under which it is created, and the
object and purpose of its creation. And though the ulti-
mate amount of the fund payable at the expiration of the
time for which it is retained, be uncertain and contingent,
yet that fact does not deprive it of assignable quality. A
court of equity gives effect to assignments of all kinds of
future and contingent interests and possibilities in per-
sonal as well as in real property, if made for valuable con-
sideration, and not in contravention of any settled public
policy upon the subject, and where the assignor is in a con-
dition to transfer the property or chose in action, or to cause
it to be transferred, to the assignee. *Wright* v. *Wright,* 1
Ves. 411.

As we have already stated, the pleadings, both bill and
answers, disclose the facts, that the partnership between
Moore and Wagenhurst had been dissolved, and all the right
and interest of both partners in the funds retained for re-
pairs under the contracts, had been assigned to Reyburn
and Little, upon full and adequate consideration, long be-
fore the assignment was made by Moore, in the name of
Moore & Co., to Wineland, the complainant. And the first
question is, Was Moore, at the time of making that assign-
ment to Wineland, in a condition to make a valid transfer or
assignment of the retained repair funds in the control of the
treasurer of the United States?

There is no allegation or pretense in this case that the
complainant, Wineland, was not fully aware of the fact at
the time of the assignment to him from Moore, that the
partnership between the latter and Wagenhurst had been

dissolved; nor is there any claim or pretense that there was or had been any special delegation of authority to Moore by Wagenhurst to make such assignment, or to do any other act after the dissolution, in the name of the former partnership. Indeed, in the bill it is alleged that the partnership had been dissolved, and the claim made is that, upon general principles of partnership law, Moore had authority as settling partner, to make the assignment to the complainant in the firm name of Moore & Co.

It is certainly a well-settled principle in the law of partnership, that in whatever manner the partnership is actually ended, there are certain effects and consequences of its determination, which necessarily result from it as between the partners themselves, and will equally affect their transactions with third persons, where the latter have notice of the dissolution. As between the partners themselves the dissolution of the partnership puts an end to the joint powers and authorities of all the partners any farther to employ the property or funds, or credit of the partnership in the business or trade thereof, subject to certain well-recognized exceptions rendered necessary to the lawful settlement of the affairs of the late firm. None of the partners can create any new contracts or obligations binding upon the partnership; none of them can buy, or sell, or pledge goods on account thereof; none of them can indorse, *or transfer the partnership securities to third persons, or in any other way make their acts the acts of the partnership.* In short, none of them can do any act, or make any disposition of the partnership property or funds, in any manner inconsistent with the primary duty, *now incumbent upon all of them,* of winding up the whole concern of the partnership. Sto. on Part., Sec. 322, and the cases and authorities there cited; *National Bank* v. *Norton,* 1 Hill (N. Y.) Rep. 572; *Ex parte Williams,* 11 Ves. 5; *Peacock* v. *Peacock,* 16 Ves. 49, 57; *Wilson* v. *Greenwood,* 1 Swanst. 471; *Crawshay* v. *Maule,* 1 Swanst. 495; *Pearpoint* v. *Graham,* 4 Wash. C. C. Rep. 232; 3 Kent Com. (6th ed.), p. 63, and cases cited; Pars. on Part. (2d ed.), pp. 402–404. Mr. Parsons, in his work on Partnership,

page 404, says, that he considers the true rule to be " that no contract can be made by one partner after dissolution by which the others will be bound, unless such contract *is necessary* for settling up the business of the concern in the most judicious manner."

It is a well-settled principle, that every person dealing with members of a dissolved partnership, is presumed to know the special rules of the law of partnership, and such person cannot ground a right or defense upon his ignorance of them. Pars. on Part., p. 233. It is very clear, that Moore had no greater authority over the affairs of the dissolved partnership than his copartner Wagenhurst had. And both the partners having disposed of all their rights and interests in the retained repair fund, it would seem to be clear that Moore had no further power or authority to make the subsequent assignment to the complainant, Wineland, and that the latter could take no right or title by that assignment, to defeat the just rights and claims of the prior assignees, claiming by virtue of assignments of both the partners. The rights of both partners were extinguished in the funds attempted to be assigned, and were no longer subjects of assignment, under pretense of settling partnership affairs.

But it is insisted on behalf of the complainant, Wineland, and his case is founded exclusively upon the contention, that, claiming under the assignment to him of December 21, 1898, which was immediately recorded, and prior notice thereof given to the treasurer, Roberts, he thereby became entitled to a superior right and equity to that acquired by either Reyburn or Little, though he was a subsequent assignee, because of the fact, as he alleges, he is an innocent purchaser for value, without notice of the prior assignments. This contention assumes that Moore had authority to make the assignment to the complainant, in the partnership name, notwithstanding the dissolution of the partnership; — a proposition strongly controverted by the defendants, and whose position would appear to be strongly supported by the authorities to which we have referred.

Conceding, however, for the sake of the argument, that the assumption of power in Moore to make the assignment could be maintained, the question then arises, is the complainant in a position, upon the case presented by him, to insist upon and be entitled to receive the protection afforded to an innocent, *bona fide,* purchaser for value, without notice? The doctrine of innocent purchase for value without notice, applies not only to bills for relief, but also to bills for discovery. But to entitle the purchaser to the benefit of such protection, he must have made the purchase *bona fide* and without notice, and for a valuable consideration, and he must also have paid the purchase money in full. He must have purchased the title in fact, and not be a mere purchaser without a semblance of title. These essential facts must not rest simply in mere allegation, but they must be established to the entire satisfaction of the court. Therefore, when a plaintiff comes into a court of equity seeking relief grounded upon either a legal or an equitable title, against a *bona fide* purchaser of an equitable title of prior date to that asserted by the plaintiff, if the latter be entitled to relief in such case, he must obtain it upon the strength of his own case, and his own evidence; and he is not entitled to extract from the conscience of the innocent defendant, any proof to support it. 2 Sto. Eq. Juris., Secs. 1502, 1503; *Senhouse* v. *Earl,* 2 Ves. 450.

A party setting up and relying upon the application of the principle of innocent purchaser for value without notice, whether as ground for relief or as matter of defense, in order to prevent fraud and collusion, and that the adverse party may have a fair opportunity to meet and repel the claim, if it be unfounded in fact, must state in his pleading the deed or assignment under which he makes claim, the date, and the parties thereto; that the vendor or assignor was entitled, and rightfully conveyed or assigned; the consideration must be stated, with a distinct averment that it was *bona fide* and truly paid independently of the recital in the deed or assignment. Notice must be denied previous to and down to the time of paying the money and the delivery

·of the deed or assignment; and the circumstances of the transaction must be fully and fairly stated. *Boone* v. *Chiles,* 10 Pet. 177, 210, 211.

In this case, the allegation made in regard to the complainant being a *bona fide* purchaser for value without notice, is wholly insufficient, and wanting in the essentials that constitute a *bona fide* purchaser for value without notice; and the general allegation of the bill that the complainant is such an innocent purchaser for value without notice, is flatly denied by the defendants in their answers. In the answer of Reyburn he utterly denies that Moore was possessed of any authority to make the assignment to Wineland; and he avers that he is justly and equitably entitled to the fund retained under contract No. 2361, and will be entitled to receive the same when it becomes payable by the treasurer, — certainly, as he avers, " against subsequent parties who, long after the said contract was completed, and contrary to the spirit of the law as to government claims, attempt, as a matter of speculation, to secure for some unknown or doubtful consideration, a transfer of the same to themselves." And in the answer of defendant Little, after denying all pretense of authority on the part of Moore to assign or transfer the fund retained under contract No. 2390, avers that " the whole affair, as affecting this defendant, is fraudulent from begining to end." In both answers, the facts and circumstances are stated from which the defendants have drawn their conclusions, as to the want of good faith in procuring the assignment to the complainant.

As we have before stated, the assignment to the complainant recites on its face the nominal consideration of $10; and in the bill it is simply alleged that, on the 21st day of December, 1898, an assignment in writing was made, under seal, by R. M. Moore as settling partner, to the complainant, of the whole and entire fund retained under the contract, " predicated of a valuable and adequate consideration." But of what this consideration consisted; when, and how it was paid, whether in full at the time of the assignment, or

afterwards, or under what circumstances as showing the bona fides of the transaction, there are no allegations whatever. This is clearly insufficient, upon all the authorities. *Wood* v. *Mann,* 1 Sum. Rep. 506, 510; *Flagg* v. *Mann,* 2 Sum. Rep. 486, 550.

The complainant having failed to make out his case, founded as it is, upon the alleged authority of Moore to make the assignment to him, and upon his being an alleged subsequent *bona fide* assignee for value, without notice of prior assignments for value, the decree of the court below must be reversed, and the cause be remanded to the court below that the bill may be dismissed; and it is so ordered.

*Decree reversed and cause remanded.*

A motion by the appellee to modify the decree was overruled.