### EGBERTS and others *vs.* WOOD and others.

Where several creditors or legatees are entitled to a rateable proportion of a common fund, which is insufficient for the payment of all their debts or legacies, all the creditors or legatees should be made parties to a bill filed for the distribution of the fund; or the bill should be filed by a part of such creditors or legatees, in behalf of themselves and all others standing in a like situation in reference to the fund.

If an express trust is created for the benefit of creditors, without conferring upon the trustee any authority to give a preference to any particular creditor, it will, both at law and in equity, be considered as a trust for all the creditors rateably.

In cases of implied trusts for the benefit of creditors, if one of the creditors comes into the court of chancery to enforce the execution of the trust, the court will act upon the principle that equality is equity; except in cases where such creditor has acquired a specific lien upon the fund by his superior vigilance, or where he is entitled to a legal preference.

The property of a copartnership, upon the insolvency of the firm, is considered, in equity, as a trust fund for the payment of the partnership creditors rateably.

But either of the partners before the dissolution of the copartnership, or all the partners afterwards, may apply the partnership funds to the payment of one creditor in preference to another.

The only restraint upon this right of giving a preference to one creditor over another, is the provision in the revised statutes, which deprives the insolvent debtor, who gives such preference, of the benefit of the insolvent laws.

It seems that one of the partners, during the existence of a copartnership, may, without the consent of his copartners, make a valid assignment in the name of the firm, of all or any of the partnership effects, directly to a creditor of the firm, in payment of his debt.

Whether one partner can, without the consent of his copartners, assign the partnership effects to a trustee for the payment of the partnership debts, and can in such assignment give a preference to one set of creditors over another? Quære.

Where one of several partners dies, the legal title to the debts and choses in action, belonging to the copartnership, vest in the surviving partners as joint tenants; and they alone are chargeable at law with the payment of the partnership debts.

And such surviving partners, without the assent of the personal representatives of the deceased partner, can appropriate the partnership property to the payment of the partnership debts, and may give such preferences in the payment of debts as they may think proper.

The representatives of the deceased partner have the right to insist that the partnership effects shall be applied to the payment of the partnership debts.

1832.

Egberts
v.
Wood.

After the dissolution of a copartnership, one of two surviving partners cannot, without the consent of the other, assign the partnership effects to trustees for the benefit of preferred creditors.

Partnership creditors are entitled to a priority of payment out of the partnership property ; and the separate creditors of the individual partners, to a priority of payment out of their separate property.

Sept. 18.

THIS was an application on the part of the defendants, D. & B. R. Wood, for the dissolution of an injunction, on bill and answer. The bill alleged that several judgments had been recovered against the defendants C. Jessup and H. Vandenburgh, as surviving partners of G. F. Lush deceased, on which judgments executions had been issued and returned unsatisfied. That Lush died on the 11th of December, 1828, whereby the partnership was dissolved ; and that I. Keeler was appointed his administrator. That the firm of Edwin Jessup, under which name the partners had been doing business, stopped payment, about the first of January, 1829, and declared itself insolvent to a large amount. That after the death of Lush, the business of the firm was continued by Jessup and Vandenburgh, until the time of their failure, without any new or other agreement than that which had previously existed. That on the 8th of January the defendant Jessup, without the knowledge, consent or approbation of the defendant Vandenburgh, or of the personal representative of Lush, assigned to the defendants D. & B. R. Wood all the debts choses in action and securities of the copartnership, upon trust to pay certain preferred creditors ; and that neither Vandenburgh, nor the personal representative of Lush had ever assented to the assignment. And the complainants therefore insisted that the assignment was illegal, fraudulent and void ; or that it only transferred the interest of Jessup, in the surplus of the assigned property, after payment of the partnership debts. The complainants further alleged that the assignees had paid the preferred creditors forty-two per cent. on the amount of their respective debts, out of the proceeds of the assigned property ; and that a considerable sum still remained in the hands of the assignees. That the estate of Lush was insolvent, and that Vandenburgh had been discharged under the act to abolish imprisonment for debt in certain cases, and had executed an assign-

ment, to J. J. Lansing, according to the statute. And the complainants prayed that the assignment executed by Jessup might be declared void ; that a receiver of the effects of the co-partnership might be appointed; that the assignees might be restrained from paying over the residue of the proceeds of the assigned property to the preferred creditors ; and for general relief.

By the answer of the assignees, all the material facts as stated in the bill were admitted ; except that it was denied that the assignment was made without the knowledge or consent of Vandenburgh, and the personal representative of Lush, or that the copartnership, as between the surviving partners, was dissolved by the death of Lush. But, on the contrary, the assignees alleged in their answer, one of them upon his own knowledge and the other upon his information and belief, that the assignment was made by Jessup with the knowledge and approbation both of Vandenburgh the surviving partner, and of Keeler, the personal representative of Lush ; and that the assignment was not executed by Vandenburgh because it was not considered necessary to its validity, he having been a dormant partner only.

*A. Van Vechten & J. Edwards,* for the complainants.

*B. F. Butler & B. R. Wood,* for the assignees.

THE CHANCELLOR. Several questions were raised on the argument of this case, which probably are not material to the decision of the present motion. It is urged, in behalf of these complainants, that upon the dissolution of a copartnership by the death of one of the partners, the survivors became trustees for all the creditors of an insolvent firm, and have no right to pay one creditor to the exclusion of another, but that all must be paid rateably. If the principle contended for is correct this suit is not properly instituted for the purpose of carrying that principle into effect. It is alleged in the bill that there were other creditors, not provided for in the assignment, to the amount of $25,000, including what is due to these complainants. To have enforced the principle of equality

among creditors, it would therefore have been necessary and proper that this bill should have been filed by the complainants in behalf of themselves and of all other creditors of the firm who might choose to come in under the decree. But this suit is instituted by the complainants in behalf of themselves alone, as judgment and execution creditors of the surviving partners; and if they can reach the assigned property in this suit, they will probably be entitled to so much thereof as is sufficient to satisfy their judgments, to the exclusion of all other creditors of the firm. Where it appears upon the face of the bill that there will be a deficiency in the fund, and that there are other creditors or legatees who are entitled to a rateable distribution with the complainants, and who have a common interest with them, such creditors or legatees should be made parties to the bill, or the suit should be brought by the complainants in behalf of themselves and all others standing in a similar situation; and it should be so stated in the bill. (*Baldwin* v. *Lawrence,* 2 *Sim. & Stu. R.* 18. *Leigh* v. *Thomas,* 2 *Ves. sen.* 311. *Fish* v. *Howland,* 1 *Paige's Rep.* 20.) But as this objection might be obviated by an amendment of the bill, as was done in the case of *Good* v. *Blewitt,* (13 *Vesey's Rep.* 397,) it may be proper to inquire whether any such principle as is contended for does in fact exist.

Where an express trust is created for the benefit of creditors without any authority to the trustee to give a preference to any, it is, both at law and in equity, a trust for each of the creditors rateably. And even in the case of implied trusts, where one of the creditors comes into this court to enforce the performance of the trust, except in those cases where he has acquired a specific lien by his superior vigilance, or where he is entitled to a legal preference, this court will act upon its favorite maxim that equality is equity. But although the principle of equality has always been a favorite with this court, it has not heretofore been adopted as a principle of the common law. On the contrary, by the common law, the property of an insolvent decedent in the hands of his personal representatives as trustees for the payment of his debts, was in the first place to be applied to satisfy the demands of certain classes of privileged creditors to the exclusion of all

others; and even as among creditors of the same class, the personal representative might exercise an arbitrary discretion in giving a preference to one creditor over another. It is true this inequitable principle of the common law has been modified, to a certain extent, in the recent revision of the statutes. But in one respect it has been extended, by giving a preference to one judgment against the decedent over another, on the ground of priority, when, by the common law, neither judgment was a lien upon the personal estate of the decedent, and neither was entitled to a preference in payment. So, by the law merchant, although the effects of a copartnership, upon the insolvency of the firm, were in equity considered a trust fund for the payment of the partnership debts, and any of the partners might apply to this court for the purpose of having the partnership funds thus appropriated rateably among all the creditors, yet either of the partners before the dissolution of the copartnership, or all of them afterwards, might unquestionably exercise the right of appropriating those funds to the payment of one creditor in preference to another. Here, too, the revised statutes have imposed a partial restriction upon this common law right, by depriving an insolvent debtor, who attempts to exercise that right, of the benefit of the insolvent laws. But if he is willing to subject himself to this disability, by giving a preference, the payment of one creditor to the exclusion of others is valid as against the other creditors. And if the partners after a voluntary dissolution of the firm may give such preference, I see no reason which would prevent the surviving partners, upon a dissolution of the firm by the death of one of the members thereof, from giving a similar preference with the consent of the personal representative of the decedent. Such is the present case, as presented by the answer of these assignees. Although it is charged in the bill that the assignment was made without the knowledge or consent of Vandenburgh or of Keeler, the administrator, yet the defendants Jessup, and D. Wood the only assignee who has any personal knowledge on the subject, swear positively that the assignment was made with the knowledge and consent of both. And whatever may be the

1832.

Egberts
v.
Wood.

construction of the answer of Vandenburgh, it cannot on this application be evidence against the assignees.

As the decision of this question in favor of the defendants is sufficient to dispose of the motion now before me, it is not necessary that I should go further at this time. But as it has been requested by the counsel of one of the parties and may save the expense of taking testimony and of further litigation, that I should express an opinion upon some of the other questions which were discussed on the argument, I will proceed to examine them.

I do not think the partnership articles will bear a construction that the business of the firm was to be continued for the benefit of the original partners and their representatives, after the death of one of the members of the firm. The clauses relied upon by the defendants' counsel to support that construction are the clause which relates to the continuance of the partnership, and that which provides for the distribution of the profits of the concern, upon a dissolution of the firm. It appears from the articles that this was a partnership of a peculiar character. Lush & Vandenburgh were already in partnership, as merchants, in a particular business; for the continuance of which an express provision was made in these articles. The new company purports to have been formed between Edwin Jessup of the one part, in whose name the business was to be conducted, and of Lush & Vandenburgh in their copartnership character of the other part; and provision is made for the division of the surplus profits of the concern during the existence of the copartnership, the one half thereof to Jessup, and the other half to Vandenburgh & Lush, jointly. The capital of the company also appears to have been furnished in the same proportions. The provision, as to the continuance of the company, is as follows: " Which partnership is to continue from the date of these presents during and until the same shall be dissolved and put an end to, by and with the mutual consent of both the parties to these presents." There is nothing in this clause from which an intention to continue the business of the firm after the death of one of the parties could be inferred. And the fact that it was a partnership between Jessup of the one part, and the pre-existing company

of Vandenburgh & Lush of the other, is conclusive to show that such could not have been the understanding of the parties. By the death of either Vandenburgh or Lush, the copartnership between them would be dissolved ; and the affairs of that concern could not be settled until their share of the profits or loss in the new concern with Jessup, could be ascertained. And on the other hand, if Jessup should die, there could be no object in continuing a company which was to be carried on in his individual name only. The clause which provides for the distribution of the surplus upon the determination of the partnership, directs one moiety or half part to be given to Jessup, and the other moiety to Vandenburgh & Lush, or to the executors or administrators of either of the parties who might happen to die previous to the dissolution or termination of the copartnership. The provision for the payment of the share of a deceased party to his personal representative does not imply that the partnership is to be continued after his death ; because such a provision would be equally proper if the parties contemplated the event, which has actually happened, of a disolution occasioned by the death of one of the partners. And the expression, " either of the said parties who may happen to die *previous* to the dissolution," is equally appropriate when applied to the case of a dissolution by the death of one of the partners. The party, in such a case, does die previous to the dissolution of the copartnership according to the ordinary understanding of these terms, although the company is dissolved, *eo instanti,* by the death of such party.

It appears to be the better opinion, that one of the partners at any time during the existence of the partnership, may assign the partnership effects, in the name of the firm, for the payment of the debts of the company, although by such assignment a perference is given to one set of creditors over another. In the case of *Dickinson* v. *Legare and others,* cited by the complainants' counsel from the equity reports of South Carolina, (1 *Dessaus. R.* 537,) the court of chancery of that state decided against the validity of an assignment of all the partnership effects, made by one of the partners without the knowledge or consent of the other, to pay the debt of a particular creditor. Chancellor Matthews, who delivered the opinion

of the court in that case, admits that it was a question of the first impression, no case analogous to it having come under the view of the court. That assignment, however, was made under very peculiar circumstances. The company during the revolutionary war were doing business in this country. And while one of the partners was on a voyage to France, he was taken by a British ship of war and carried as a prisoner to England, where he was prevailed upon by a creditor residing there, to give him a general assignment of all the partnership funds, which funds were then in this country, to secure the payment of his particular debt against the firm. Although the decision was put upon the general ground that one partner had not the right to assign the partnership funds in this manner without the consent of his copartner, there is no doubt that the particular circumstances under which that assignment took place had a very considerable influence in bringing the mind of the chancellor to that result. The assignment in that case being made by a citizen of one of the United States during the existence of the war, to an alien enemy and in an enemy's country, was probably void, by the laws of war, so far at least as to prevent its being carried into effect by any of the courts of this country. And certainly it could not be considered as made according to any mercantile usage. That decision, however, has been recently overruled by the court of appeals in the same state, in the case of *Robinson* v. *Crowder*, (4 *McCord's L. R.* 519 ;) where it was held that an assignment by one partner of all the effects of the firm in payment of the partnership debts, was valid as against his copartners. In *Pierpont* v. *Graham*, (4 *Wash. C. C. Rep.* 232,) in the circuit court of the United States for the district of Pennsylvania, Judge Washington doubted the right of one of the partners without the consent of the others, to assign the whole of the partnership effects in such a manner as to terminate the partnership. But he declined expressing any decided opinion upon this question, which he considered unnecessary to the decision of the cause then before him ; as, in that case, the copartner had subsequently assented to the assignment. In *Mills* v. *Barber*, (4 *Day's R.* 428,) the supreme court of errors in Connecticut decided that one partner, without the

knowledge of the other, might make a valid assignment of partnership funds to secure the payment of a debt due from the firm. And in *Harrison* v. *Sterry,* (5 *Cranch's Rep.* 300,) the supreme court of the United States decided that one of the partners might assign the partnership effects to a trustee for the security or payment of the creditors of the firm, without the concurrence of his copartners. I do not intend in this case to express any opinion in favor of the validity of such an assignment of the partnership effects to a trustee by one partner, against the known wishes of his copartner, and in fraud of his right to participate in the distribution of the partnership funds among the creditors or in the decision of the question which of those creditors should have a preference in payment out of the effects of an insolvent concern. As a court of equity, upon a proper application, would protect the rights of the several partners in this respect before an assignment had actually been made, and if they could not agree among themselves would appoint a receiver of the effects of the partnership and would apply them in payment of all the debts due from the firm rateably, it might perhaps apply the same rule to the case of an assignment to a trustee for the payment of the favorite creditors of one of the partners only, where the equitable rights of the parties had not in fact been changed by any proceedings under the assignment.

In this case, however, the partnership was actually dissolved before the assignment by the death of one of the partners. The effect of that dissolution, as to this assigned property which consists of debts and choses in action only, was to vest the legal title to the whole in the surviving partners as joint tenants under the law merchant ; that is, subject to the equitable right of each of those partners and of the representatives of the decedent, to have the proceeds applied in the first place to the satisfaction of the partnership debts, and to have the surplus, if any, distributed rateably among the surviving partners and the representatives of the deceased partner, according to their several interests in the firm. The legal interest in all the assigned property was in the surviving partners, and at law they alone were chargeable with all the debts of the firm. They had therefore the right, with-

out the assent or concurrence of the representative of Lush, to appropriate this property for the payment of the debts of the firm in such manner and by giving such preferences as they might think proper. (1 *Dallas' Rep.* 248. 2 *Idem,* 65, n. 7 *Mass. Rep.* 257.) When it is said that by the law merchant the *jus accrescendi,* or right of survivorship, doth not take place among partners in trade, it is meant that it does not take place for the exclusive benefit of the survivor, as it does in a joint tenancy at the common law ; but that the survivor holds the partnership fund for the payment of the partnership debts and the settlement of the partnership concerns, and the balance, if any, to be distributed equitably between the representative of the deceased partner and the survivor. It is only the decedent's share of such balance which belongs to that representative as a part of the estate. But he has a right to insist that the partnership effects shall be applied to the payment of the debts of the firm, as the separate estate of the decedent may eventually be made liable for any deficiency. He has, however, no interest in the question as to what debts shall be paid first, in case the partnership effects are insufficient to pay the whole. And the legal title being vested in the survivor, he alone has the right, at law, to determine that question. The situation of the surviving partners is different in this respect. By the dissolution of the copartnership they became joint tenants of the partnership securities, but without the right in either, against the consent of the other, to assign the whole interest in the partnership effects to trustees for the benefit of preferred creditors. And, in this case, if Vandenburgh neither consented to the assignment before hand nor did any act to ratify it afterwards, his moiety of the assigned property did not pass to the defendants, D. & B. Wood, under the assignment.

I do not see, however, that the establishment of that fact would aid the complainants in this case. The assignment of one of the surviving partners for the payment of the partnership debts would transfer his moiety or share both of the legal and equitable interest in the fund to the assignee, so that the assignor would no longer have any interest in the property. Even by an assignment under the bankrupt act, upon a sep-

arate commission taken out against one of the partners, the legal interest in his moiety of the partnership effects passes to the assignee, who holds it as a tenant in common with the other partner. (5 *John. Ch. Rep.* 70.) It appears then by the complainants' bill in this case that at the time of the commencement of this suit, neither Jessup nor Vandenburgh had any interest whatever in the partnership property now in controversy which could be reached either at law or in equity. Jessup had executed an assignment which either transferred the whole, or at least the half of the debts and securities of the partnership to the Woods, in trust for the payment of a part of the partnership creditors. And Vandenburgh had afterwards executed an assignment under the insolvent act, by which whatever interest remained in him, in this or any other property, was vested in Lansing his assignee. If the whole did not pass to the Woods under the first assignment, Lansing as the assignee of Vandenburgh, is alone authorized to call upon the first assignees for a moiety of the property, to be distributed among all the creditors rateably. As neither Jessup nor Vandenburgh had any legal or equitable claim to call upon the Woods for any part of the assigned fund at the time of the commencement of this suit, these complainants have no claim upon that fund except as general creditors of the firm, and through the medium of Lansing, the assignee of Vandenburgh. If Lansing acquired any title to a moiety of these partnership effects under the assignment to him, the proceeds of that part of the fund must, upon equitable principles, be applied to satisfy the partnership debts, before any thing can be claimed by the separate creditors of Vandenburgh. The rule upon this subject is, that the partnership creditors are entitled to a priority of payment out of the partnership effects, and the separate creditors of the individual partners may claim a priority of payment out of their separate effects. (*Taylor* v. *Fields,* 4 *Ves. Rep.* 396. *M'Culloh* v. *Dashiell's adm'r,* 1 *Harris & Gill's Rep.* 96.) Situated as this suit is, I can see no benefit which can be derived to the complainants from the prosecution of it against the assignees of Jessup. If there are any partnership effects not included in Jessup's assignment, it may be necessary to continue the suit against the judgment debtors for the purpose of reach-

ing his interest in those effects, and which did not pass by either of the assignments.

The injunction so far as it affects the rights of D. & B. R. Wood, as the assignees of Jessup, must be dissolved.