1840.

Hitchcock *et al.*
*v.*
St. John *et al.*

------◆------

## HITCHCOCK *et al. v.* ST. JOHN *et al.*

ONE of two partners resided in the city of New-York, carrying on the business there, and the other in Augusta, Georgia, conducting the business there, under the same firm. In June, 1838, a suit at law was commenced against the firm, by the complainant's in the present suit. On the fifth of June, 1838, two assignments were made by the partner residing in New-York. The first was of his separate property, which it is not necessary to notice. The second was of all the partnership property of that firm. It directed, that all the fees and costs due to certain attornies for past services, as well as those attending the assignment, should be first paid; and next, all debts of the firm except acceptances on behalf of another firm of which these partners were members, where they had not funds to meet them. The instrument was executed by one of the members, and no proof was given of a ratification or assent by the partner in Augusta.

*Held*, that a preference was given by the assignment to certain creditors, not only to the attornies, but by the exception of the acceptances. And that one partner on the eve of insolvency, cannot assign all the partnership property to a trustee, for the purpose of paying debts of the firm, with any preferences. Such an assignment, distributing the effects equally among the creditors, is valid.

Although partnership funds might be exhausted by an immediate payment to a creditor by one partner, yet there is no implied authority arising from the partnership relation in one partner, to appoint a trustee of all the funds, to collect and distribute

1840.

Hitchcock *et al.*
*v.*
St. John *et al.*

them as that partner shall determine. It is not necessary to establish that the preference of creditors, or selection of the trustee, was against the wishes of the co-partner. His assent or subsequent ratification should be shown.

An assignment or bill of sale of furniture was made on the 2d of June, 1838, in satisfaction with other property transferred, of a debt owing by the assignee. A symbolical delivery was made, and an agreement entered into, allowing the assignor to occupy the house (which had also been conveyed,) and furniture, until the ensuing May, at a certain rent. On the 16th of July, judgment was recovered and the bill filed, while the possession continued. The season was unfavorable to rent the premises, and the rent agreed to be given was a fair one. No part of it, however, had ever been paid, and as the assignor was avowedly insolvent, no part could reasonably be anticipated to be paid.

*Held*, that the bill of sale was void against the judgment creditors. That such a permission to occupy would not have been illegal, had the assignee advertised the premises without obtaining a tenant, and given due publicity of the transfer.

The true *teste* of the validity of such transfers is the publicity and notoriety of the change of ownership. If this is ample and decided, the employment of the assignor as clerk or agent, for a reasonable time, will not vitiate the transfer.

Where two instruments are impeached in a bill on distinct grounds, and as against distinct parties, (and no objection is taken by demurrer,) the court on decreeing both to be void, will permit the complainant to proceed against either fund, or both, simultaneously, until he has obtained satisfaction, when his proceedings will be arrested.

The court does not direct payment under a judgment creditor's bill, to the complainant, but to a receiver, who is to look to the legal priorities, if any, of others.

Terms of a decree in such a case.

July 10, 11, 13.
18.
THE bill in this cause was filed by a judgment creditor after execution returned unsatisfied, for the purpose, *first*, of having an assignment of partnership property set aside, and *next*, of declaring a certain bill of sale of household furniture fraudulent and void, and that the amount of the judgment might be paid out of the funds.

*Mr. Titus* and *Mr. Silliman*, for complainants.

*Mr. Sherwood*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR:—I shall first examine the question respecting the assignment of the partnership property. The defendants Isaac R. St. John and David W. St. John were partners carrying on business in the city of New-York, and also in Augusta, Georgia, under the firm of I. R. St. John & Co. The former resided in New-York; the latter in Augusta. In the month of June, 1838, a suit was commenced against them by the present complainants, and judgment was recovered in the month of July of that year, which was followed up by the present bill, filed the 26th of November, 1838. On the 5th day of June, 1838, three several assignments were prepared, and executed and delivered by the 8th of that month. By the first of such assignments the defendant Isaac R. St. John transferred to the defendants Samuel St. John and Isaac Monroe, his separate and individual property, upon certain trusts. By another of the assignments, after reciting that he and David W. St. John were brokers, transacting business under the firm of I. R. St. John & Co., and were largely indebted to various persons, and were desirous of making a fair and equal division of their property among their creditors, it was witnessed, that the said Isaac R. St. John for and in behalf of himself and his co-partner, the said David W. St. John, did assign to the defendants Monroe and Samuel St. John, all the estate of the said firm in the United States, upon trust to sell and dispose of the same, and collect the debts, &c., and out of the proceeds to pay all their own necessary expenses, counsel fees, &c, with a reasonable commission for their services. Then to pay all the debts, sum or sums of money due by the party of the first part to P. Sherwood and James W. White, or either of them, for solicitors, attornies or counsel fees, whether the legal claim may stand in the name of both or either of them. Then to pay all the debts and liabilities of the said firm of I. R. St. John & Co., ("excepting all such debts and "demands, sums of money, liabilities and responsibilities "due or to become due from such firm as are or shall be- "come due and owing from the said firm of R. St. John

*1840.*

*Hitchcock et al*
*v.*
*St. John et al.*

" & Co., or for which they have become liable by reason " of having accepted any draft or drafts or bill of exchange " drawn by the firm of I. R. St. John, Gregory & Co., of the city of New Orleans, upon the firm of D. R. St. John & Co., the same having been accepted solely for the accommodation of, and without any funds of the drawers thereof in the hands of the said Isaac R. St. John & Co. After paying these claims, the residue of the funds, if any, were to be applied in paying all the debts due or to become due to and among all the creditors of the said Isaac R. St. John, and David W. St. John, and of each of them, and in equal rateable proportions. In order that the said creditors may be more satisfactorily ascertained, the trustees were authorized to cause at least one year's notice by advertisement to be given in two newspapers for the creditors of I. R. St. John and David W. St. John, and each of them, to exhibit their claims, and thereupon to proceed and make a dividend of the trust funds among such creditors as shall appear, without being liable to any other creditor.

The third assignment was by I. R. St. John on behalf of the firm of I. R. St. John, Gregory & Co., of which he and Elliot W. Gregory appear to have been members. It is similar in its provisions to that last recited, giving a preference to the claims of Mr. Sherwood and Mr. White, then providing for the payment of the creditors of the firm.

The assignment of the property of T. R. St. John & Co., is signed and executed by T. R. St. John alone, and is not executed in terms on behalf of the partnership. David W. St. John, the other member of the firm, lived some time after the assignment was made, at least until after November, 1838; and there is no ratification of the transfer by him. There is no evidence as to either his assent or disapprobation.

In testing the validity of this instrument, it is first to be ascertained whether it gives preferences amongst creditors; because the rule seems well established, that this court will sustain an assignment of the whole of the partnership

funds by one partner, where all the creditors are admitted to an equal participation.

1840.

Hitchcock *et al.*
*v.*
St. John *et al.*

In the first place the instrument gives the preference to the debts owing the attornies and counsel of the parties; not merely for expenses attending the transaction, but for all previous services. Now meritorious as may have been those services, they cannot constitute a debt of a stricter obligation or purer nature than any other; and even if the law ever discriminated, as it does not, between the character of debts, it would be impossible to hold this one an object of peculiar favor. Again, after payment of these demands, the surplus is to be divided among all the creditors of the firm of I. R. St. John & Company, except the holders of their acceptances of drafts of the New-Orleans house, made for the accommodation of the latter, and without funds in hand. I consider (though the point is doubtful) that the true construction of the instrument is, that creditors of this class are admissible under the last clause, and would come in together with the creditors of the two members of the firm for any surplus. And the argument used to justify the assignors in appropriating the funds of that firm in payment of the debts immediately created by that firm, and to except mere accommodation paper, possesses some weight. But after all, the holders of these drafts or acceptances must be presumed to have given their money or property as well upon the credit of the drawees or acceptors as of the drawers. They expected the convenience of having the money in New-York to meet their engagements. They were creditors of the firm here under such acceptances, as fully and as fairly entitled to a share of the funds here as any creditor who had exclusively dealt with the New-York firm. Hence there was a preference given among creditors, all of whom were in the view of the law equal in the legality and justice of their claims; and the motives for giving the preference cannot be regarded.

· It is not to be disputed that one partner on the eve of insolvency, or when it plainly exists, may pay a debt of the firm in money or property; thus effectually granting

a preference. Until a bankrupt act or the legislature interferes, such a payment must be held valid. In *Egbert* v. *Woods*, (3 *Paige*, 517,) the chancellor went at length into the general question. A partnership was dissolved by the death of one of the members. The business was, however, continued. The firm afterwards became insolvent. One of the survivors made an assignment of all the property of the firm upon trust to pay certain preferred creditors. The bill alleged that neither the other survivor, nor the representatives of the deceased partner, assented to the transfer. But by the answer this was expressly denied: and it was averred that it was made with the approbation and knowledge of both. The case arose upon a motion to dissolve an injunction upon bill and answer. The chancellor sustained the assignment. He observed that upon insolvency, one of the partners before a dissolution, and all of them afterwards, might unquestionably exercise the right of appropriating the funds to the payment of one creditor in preference to another. That if the partners, after a voluntary dissolution, might give such a preference, he saw no reason which should prevent the survivors upon a dissolution of a firm by death, from giving a similar preference with the consent of the personal representatives of the deceased.

It is true the chancellor expressed himself thus : " It " appears to be the better opinion that one of the partners " at any time during the existence of the partnership, may " assign the effects for the payment of the debts of the " company, although by such assignment a preference is " given to one set of creditors." He then examines several cases ; and he takes a distinction between the right of one partner upon dissolution by death, to make such an assignment against the personal representatives of the deceased, and as against another surviving partner. · That as to the former the power existed without consent, but not as to the latter. He also states that he means not to express any opinion in favor of the validity of such an assignment by one partner, against the known wishes of his

co-partner, and in fraud of his right to participate in the distribution of the partnership funds among the creditors.

In the subsequent case of *Havens* v. *Hussey*, (5 *Paige*, 30,) the chancellor laid down the positions, that although one partner might during the existence of the firm transfer the partnership effects directly to one or more creditors, and thus give them a preference, yet that he had no power to make an assignment to a trustee against the known wishes of his partner, for the benefit of favorite creditors of the assignor, in fraud of the rights of his co-partner to participate in the distribution of the effects, or in the decision of the question which of the creditors should have a preference. That it was no part of the ordinary business of a co-partnership to appoint a trustee of the partnership property, and that no such authority could be implied.

I do not know of any decision exactly in point upon this subject, except those of Chancellor Matthews in *Dickinson* v. *Legare*, and of the court in *Robinson* v. *Crowder*, (1 *Dess. R.* 537. 4 *McCord's N. C. L. R.* 519,) and *Dechard* v. *Case*, (5 *Watts' Rep.* 22.)

The power to make a sale of the partnership effects, resides in each partner while the relation exists. The power to bind the firm upon a purchase, equally exists in each, although the goods never came into joint stock. All these instances of authority, as well as that to make negotiable paper, flow from the principle that each is the agent of the whole. But for what is he such agent? For the purposes of carrying on the business of the firm, and because the authority to do the act, is implied from the nature of the business. (Best, J., in *Barton* v. *Williams*, 5 B. & A. 405.)

Now a transfer of all the effects of a firm for payment of its debts, is a virtual dissolution of the partnership. It supersedes all the business of the firm as such. It takes from the control of each, all the property with which such business is conducted. The purposes of the business then clearly do not require that such a power should be implied. What other reason is there for holding, that by the contract of partnership it is to be inferred?

I do not think that the principle insisted upon by the counsel for the defendant, is the true one, viz., that such a transfer is only invalid, when it operates as a fraud upon the other partner; when, for example, it is made against his wishes, and to give preferences which he is unwilling to give. It strikes me, that the principle upon which the invalidity is established, lies deeper. I consider that neither during the existence, nor after the dissolution of a partnership, can such a transfer be made, because of want of power in any one partner to make it. A direct payment of money, or a transfer of property to an acknowledged creditor, is an admitted and a necessary power, during the existence of the partnership. We probably are compelled by authorities, to go so far as to say that it is a necessary surviving power after a dissolution, in whatever way that is effected. All that is requisite to test the transfer is, the amount of debt and the extent of the fund assigned. But upon an assignment of the property of a firm to a trustee, a complication of duties and responsibilities is involved. An agent is appointed to control and dispose of the whole. The capacity, integrity, and industry of another are brought to the management; and the fitness of the party selected is judged of solely by one member of the firm. From what part or principle of the partnership relation, can such an authority emanate? It is impossible to uphold a rule which would rob every member of a firm of a voice and share in this last, and probably most important act, of a failing house.

It is no contradiction of this doctrine, that where the assignment is made after insolvency, and divides the funds with perfect equality among all the creditors, it will be supported. It is clear that either partner might file a bill, obtain an injunction and receiver, and insure an equal distribution of all the funds. An assignment fairly securing the same equality is an object of favor in this court. In the absence of any indication on the part of the co-partner of a contrary intention, it may well be inferred that he consents to do justice. A serious question might indeed arise in a case in which, after such an assignment

by one partner, the other should make a transfer of a specific piece of property, in payment of a just debt of the firm.

My opinion upon this point being sufficient to set aside the assignment, I shall not enter upon the other serious objections taken to it.

But the bill also impeaches a transfer of certain furniture, made by Isaac R. St. John, to the defendants, Joseph D. Beers and Lewis Curtis. No objection to this union of demands having been taken at the proper time, it is necessary to pass upon it.

In the month of November, 1837, a suit had been commenced upon the notes on which the judgment in question was recovered. On the 2d of June, Isaac R. St. John made a regular bill of sale of the furniture in the house he then occupied, and also conveyed the house and lot to Beers & Curtis, as agents of the firm of Thomas Wilson & Co. St. John was largely indebted to that firm; and in the answer it is expressly stated, that upon the conveyance and delivery of the said furniture and house, and also of certain stocks, negotiable paper, &c., the said St. John was wholly discharged from his indebtedness to such firm. The consideration expressed was $8000. On the 16th of July, 1838, judgment was recovered, and on the 26th of November of that year, the present bill was filed.

A symbolical delivery of the furniture was made, by handing over one of the articles to the defendant Beers. No removal of any part of it took place, but the assignor, St. John, remained in possession until about the 2d day of April, in the year 1839.

The defendants allege, that it being a very unfavorable season of the year to make sale of household furniture, or to lease and rent a house, they considered it expedient to allow St. John to remain in possession, and accordingly executed a lease to him for the residue of the year, down to the 1st of May ensuing, at the rent of $1250. The furniture has since been sold under a modification of an injunction, permitting its sale upon giving security. It is.

also stated, that it was agreed that if the assignees should, during the term, find a good opportunity to dispose of the house and furniture, St. John was bound to surrender them. I do not find this averment established by testimony. There is a strong denial in the answer of all fraudulent intent. The important question, a question still afloat, is, whether the statute has pronounced such a transaction fraudulent.

The statute (having provided that every sale by a vendor, and every assignment by way of security of goods and chattels, shall be presumed to be void as against creditors, unless accompanied by an immediate delivery, and followed by an actual and continued change of possession,) directs that it shall be conclusive evidence of fraud, unless it be shown that the transfer was in good faith, and without any intent to defraud the creditor or purchaser. It is to be admitted that while no judge has questioned the right in the claimant to repel the presumption of the statute, nor omitted to weigh the circumstances adduced for that purpose, the tendency of the decisions both of this and of the supreme court has been to apply the statute rigorously. The judges have required, in order to sustain these transfers, such palpable and unequivocal evidence of good faith, notoriety, and exercise of authority as has rarely been found attending these transactions. It is a striking example of this disposition, that the supreme court has twice expressed an opinion that an actual removal of the property was requisite, unless from the nature of the articles, or from very special circumstances, such removal could not be effected. As these were opinions, not decisions in causes, I have felt at liberty to differ from the learned judges, and have held that a removal was not essential. That the sole question was, whether there was an open and actual change of the possession and control, the exclusion of the assignor, and the notorious and avowed dominion of the assignee. A possession and control might be resumed by the assignor after the removal, and removal was not therefore conclusive evidence of fairness. The exclusion of the assignor might be as ab-

solute, and the change of control as marked, while the property was retained upon the premises as if it was removed. (*Lee* v. *Huntoon, Nov.* 1839, *ante,* p. 447.) Again, it has been repeatedly held in this court that it was no justification of a continued apparent possession in the assignor, that he was employed by the assignee as his clerk or agent to aid in winding up the concerns. (*Hart* v. *Acker, in Ch., Ap.* 1838, *Edwards on Receivers,* 280. *Schofield* v. *Hull, ibid,* 282. *Butler* v. *Stoddart, per Chancellor,* 7 *Paige,* 163.) Here again the convenience of all interested in a *bona fide* assignment recommends that this doctrine should not be over rigorously pressed. It is undeniable that in the majority of cases, the aid of the assignor is the most serviceable that can be procured, if not essential.

After all, in my opinion the true test by which such questions should be governed, and which I have applied to the numerous cases that have already been before me, is the publicity given to the transfer. In the case of a transfer of goods for example, what can be more easy or a plainer duty, than to advertise in newspapers, and place a distinct notice upon the premises, of the change of ownership? If an assignee does this, and openly announces in such publication that he shall employ the assignor as clerk or agent for a reasonable period, the assignment will prevail. If he takes this course, no removal of the property can be necessary. In fact, almost every equivocal or suspicious act, which under other circumstances will tend to overthrow an assignment, may thus effectually be neutralized.

The rigorous application of the statute to which I have alluded was broken in upon by the opinions of several of the senators in the case of *Butler* v. *Stoddart,* in the court of errors, (20 *Wendell,* 507.) The result of the opinions of the chief justice and Justice Cowen is stated by the reporter to be, that where there is no change of possession, unless it be shown that there was a necessity, *or manifest fitness and propriety* for the continuance of the possession by the vendor, independent of benefit to him, the sale is void. The *bona fides* of the transaction, and the absence

of the intent to defraud, is not enough to render the sale valid. On the other side, Senators Verplanck and Dickinson held, that where the sale was *publicly made*, in good faith, and without intent to defraud creditors, for a fair and full consideration, and the motives for leaving the property in possession of the vendor, were such as ordinarily influence honest men, the sale will be valid. Let the present case be tested by the doctrines of the judges and those of the senators.

There was no actual delivery. A symbolical delivery, such as the present by delivery of one article, is undoubtedly superseded by the statute. There was the continuance of an unchanged possession by the assignor. There was no publicity whatever; the assignment being known only to the parties, their counsel and a clerk. The assignee could have advertised the change of ownership; offered the property upon lease for the residue of the year; and if no offer had been made, or none to a reasonable amount, could have placed either a stranger in the occupation to preserve it, or could have permitted St. John to remain. But instead of this, he gives a lease to St. John the assignor, then notoriously insolvent, for a rent of $1250 a year, not one cent of which could he have imagined would be paid. The assignor receives a benefit in the use and enjoyment of the property at a nominal rent, no part of which was ever paid, and which it could not be supposed would be paid.

Again, one important ground of the opinion of Senator Verplanck was, " that there was strong proof of the pub- " licity of the assignment. That such publicity had " always been held one of the strongest evidences of good " faith." There was nothing of publicity here.

It appears to me that I cannot support the assignment in question, consistently with the numerous actual decisions of this court, and of the supreme court; nor even with the principles of the dissenting senators in *Stoddart* v. *Butler*. I do not deem it necessary even to cite the other authorities, as they were referred to by counsel, and are familiar to judges and the profession. This assignment

or bill of sale must be declared void as to the complainants. With respect to the individual assignment of the defendant St. John, I do not find any statement of what it consisted, nor indeed that there was any except the watch, and am therefore unable to say whether the dealing under it rendered it void or not. All the individual property I find, is the watch, a few articles exempt from execution set forth in schedule F., and the furniture in G., the subject of the bill of sale. His own share of the partnership property might pass; but that is nothing, as the partnership debts must be first paid. The testimony relates to the dealing with the assets of the firm. It seems to me there can be no adjudication upon this assignment, because there is nothing which appears to have passed under it. The complainant has a right to have the watch delivered to the receiver, or its proceeds, if sold.

A question may arise, whether as between the parties interested separately under these instruments, any apportionment of the debt recovered can be made. If it is desired, I will hear counsel upon this subject. Otherwise the complainant must have his decree against both the assignees of the firm, and the transferees in the bill of sale, with directions to exhaust his remedy against one, before resorting to the other fund.

In the opinion heretofore delivered, I suggested that the complainant might resort to either fund, but should exhaust his remedy against one, before going against the other. I am satisfied, however, that they have a right to proceed against both simultaneously. The receiver will of course pay only the true amount due,—and when the complainants are paid, the parties can apply, if there are no other persons who have a right to prevent it, for a discharge of the receiver.