The Vice-Chancellor.
In disposing of the numerous motions which have arisen in this cause, I will deviate from their chronological order, and begin with the complainant’s motion for a receiver against his two former partners. This motion will be considered as if the proposed amendments to the bill had been made.
The bill, although it contains many expressions of opinion and belief as to various matters, is not explicit "or positive in some of its most important points. Thus, there is no allegation that the firm of Hayes & Heyer is insolvent. It is not charged that either Morris Ketchum, or Ketchum, Rogers <fc Bement, are the holders of any of the notes to the amount of $20,000, which they indorsed for Hayes & Heyer. They are either indorsers or holders. In respect of their claim to be creditors for $10,000, loaned to the latter firm, the justice of their claim is not questioned.
As to the usury mentioned in the bill, the only specific charge of usury, is the taking of $45 by Ketchum, Rogers & Bement, for indorsing Hayes & Heyer’s note for $4500, at three months, which was discounted for the latter, and is still held by some person or corporation whose name is not stated. But it was not discounted by K., R. & B.; and therefore, though the bill charges the taking of the $45, to have been a device to cover usury, *487 and that it constituted usury, the law is settled to be otherwise, and it is not usury.
The general allegations, that the notes are void for usury, as the complainant is advised and believes, and that they are usurious, are clearly insufficient to found any issue upon that subject. The facts constituting the alleged usury, must be stated, and the reason of the requirement is applicable to this case, as well as to one where the party directly assails the supposed usurious securities. (New Orleans Gas Light and Banking Company, v. Dudley, 8 Paige, 452; Rowe v. Phillips, 2 Sandford’s Ch. R. 14.)
The case upon the original bill, is thus brought to the position of an ordinary co-partnership controversy. The concern is dissolved. Each partner has apparently an equal right to liquidate its affairs. _ The complainant is apprehensive that the assets will not pay all the debts, and that the defendant will misapply the property and give unjust and improper preferences among their creditors. There has been no settlement, and the parties have quarreled so that they cannot settle their affairs between themselves. The court of chancery is invoked to adjust them, and to appoint a receiver to collect and convert the partnership property.
The amendments add to this case, the allegation, that on the eve of the dissolution, the defendant, without consulting the complainant and without his knowledge, in the name of the firm assigned the whole or a large portion of its assets to one of the principal creditors, in trust for the payment of certain creditors ; and that this assignment is fraudulent and void, and is also a fraud upon the complainant’s rights as a partner.
The motion for a receiver against Ketchum and Heyer, necessarily rests upon the case made by the bill and amendments. The affidavits relied upon, are available to support that case, but they may not enlarge it.
Now, on the other side, it is stated more strongly than is the contrary in the bill, that the firm is solvent, and can pay all its debts. It is shown, that on the dissolution, the two general partners, and the special partner, Mr. Ketchum, signed a paper, announcing the dissolution, and stating that Heyer was thereby *488 authorized from thenceforth, to collect the debts due the firm, and would pay its debts; and that he would also use the name of the firm in liquidation.
This, the defendants claim, gives to Heyer the right to wind up and liquidate the copartnership; while Hayes contends it does not exclude him from an equal participation in closing its affairs. It is my opinion that the defendants construction of this instrument is correct. Without it, each party had the right which Mr. Hayes now claims. It was executed for an object, and in the form, as well as with a view, to its being published for the information of all who had been dealing with the firm. If nothing had been said, those persons would have treated both the general partners as authorized to settle its transactions. What then could have been the design of-the expression used, except to signify to such persons that Mr. Hayes was “thenceforth” exclusively charged with such settlement ? The complainant himself gave evidence that this was his view of the matter, by inserting in the newspaper, with the notice of dissolution, and immediately under it, his own notice that he would continue the wholesale grocery business at No. 46 Water street. A correspondent of the firm, or its debtor, seeing the notice thus published, would at once understand by it, that Mr. Heyer alone continued the grocery business, and that Mr. -Heyer alone was authorized to settle the business of the old partnership. Such being its obvious effect, I must conclude that such was its design, and that thus understood, it expresses the agreement of the parties.
The complainant does not allege any valid reasons for asking the court to interfere with this arrangement, and withdraw from Heyer the control thereby conferred upon him. It is true that the complainant alleges his apprehension of Heyer giving unjust preferences ; but it furnishes^ no sufficient ground for a receiver. The statute forbids such preferences, and the creditors, (whose more appropriate business it is,) will look to it that the statute is not violated. Besides, there is no insolvency, and there can be no preferences, in the legal sense of the word. Heyer is not shown to be insolvent, or an unsafe person to administer the-assets, and the very recent assent of the complain *489 ant to clothing him with this power, corroborates the defendants affidavits as to his fitness for the duty.
But it is strenuously contended that the assignment to Bement, and its concealment from Hayes, were such a fraud upon him, as to avoid his agreement permitting Heyer to liquidate the concern. And that if he had been aware of the former, he would not have signed the dissolution agreement.
It is needless for me to consider what force there is in this argument, because the amendments to the bill do not contain any charge which warrants its consideration. This is perhaps a consequence of the omission in the original bill to make any allusion to the terms of the agreement for dissolution. At all events, there is nothing in the bill or the amendments, impeaching its validity.
My conclusion is that the motion for a receiver against Heyer must be denied.
2. The complainant’s motion to amend his bill is resisted, because first, the assignment was proper and competently executed ; and, secondly, if otherwise, the bill would become multifarious, by the introduction of Bement, and the subject matter of the assignment.
The first objection embraces within its scope, several matters of fact, which the court cannot decide upon affidavits. As to the second, if the complainant be right in his facts, and in his application of the law, I do not think the bill will be rendered multifarious by the proposed amendments.
The bill as amended, shows an equal right in both partners to liquidate the affairs of the late partnership, which has been invaded by a collusive transfer of its effects by one partner to a creditor of the firm; and it claims to have the effects vested in a receiver, and the accounts of the partners adjusted. It brings in Mr. Bement, as one who has become mixed up with a part of the general object of the suit; a part which is essential to attaining its legitimate end.
In determining the question of multifariousness, the bill as amended, is to be taken as true.
The complainant’s motion to amend his bill will therefore be granted on the usual terms.
*490 3. This brings me to the defendant’s motion to set aside the amendments which were filed, together with the injunction and subpoena thereupon issued against Mr. Bement, for irregularity. The defendants had appeared in the suit before this proceeding took place ; so that it was manifestly irregular.
In a case of imminent danger of injury to the complainant, the court may, after appearance, allow a temporary injunction to issue upon proposed amendments to the bill, granting at the same time an order to show cause why the bill should not be so amended, and the injunction continued.
The motion to set aside the proceedings enumerated, must therefore be granted.
The granting of an injunction against Bement, on the amendments when filed pursuant to the leave now given, is so connected with the next subject of inquiry, that I will dispose of it with that subject.
4. In order to have the whole case before me at once, I directed the complainant on mentioning his motion for a receiver against the defendants, to postpone it, and at the ensuing motion day to present with it a motion for a receiver against Bement, to be made as if the bill had been amended. The complainant had avowed his intention to make such a motion, on his being permitted to amend his bill; and I had become satisfied subsequent to the argument of the motion for leave to amend, that permission ought to be given to him.
The claim for a receiver against Bement, turns in the first instance upon the validity of the assignment to him. This instrument was executed by Heyer alone, in the name of the firm the day before its dissolution. It had the sanction and concurrence of the special partner; but was wholly unknown to Hayes and unsuspected by him, although he was present, attending to business as usual, and fully competent to act. The assignment conveyed, substantially, all the assets of the firm, to a trustee in trust for the payment of all the creditors, without preferences. The firm was at the time in a state of liquidation, having disposed of all its stock in trade; and the assignment transferred no movable property.
This state of facts presents a question, which so far as I know *491 has never been decided in this state or country. It is one of momentous interest to the whole business community, and the opinions of judges upon the point, are conflicting. I prefer to leave its decision to be made by some tribunal having more leisure and ability than I possess ; trusting also that it may be decided» by a court numbering two or more judges, and thus having the benefit of consultation as well as reflection. I feel warranted in taking this course, because the exigency of the case does not require me to decide the point at this stage of the eause.(a)
There is no ground for believing that the fund in Mr. Bement’s hands will be in danger. Of the bills receivable, $30,000, were already with his house, placed there by Hayes & Heyer before the assignment, as collateral security. Nor is there any reasonable danger shown of his misapplying the funds. If he do, he appears to be abundantly able to respond for his conduct. The assignment provides for his applying the assets, precisely as the statute regulating limited partnerships requires, on the principle of entire equality.
Again, if the assignment were void, upon this bill the assets would have to be restored to Heyer under the agreement for a dissolution, and not to a receiver.
I have not looked into the defendants point, that no one but a creditor of the firm, can set aside the assignment, on the grounds urged by the complainant.
As to the provision for paying Mr. Ketchum, it does not conflict with the statute, because it appears that the firm is not insolvent.
*492 The motion for a receiver against Bement is denied; and for the same reasons no injunction can issue against him.
5. The defendants move to have certain of the partnership books restored by Hayes to Heyer’s custody. The force of the agreement for the dissolution, as I regard it, necessarily requires that Heyer should retain the books of the firm.(a) At the same time, Mr. Hayes has an undoubted right to make use of them as-occasion may require ; and considering the nature and spirit of the controversy now existing, it is not reasonable that he should be compelled to inspect them under the surveillance of his late partner. An arrangement on the subject can be made between the respective counsel, so that at proper times, Hayes may consult the books at the office of his counsel. This, if necessary, may be embraced in the order, which will direct the books to be returned to Heyer.
6. The complainant moved, pending the argument of his motion to amend, that certain language in one of the defendants affidavits, be expunged as scandalous.
The conduct is insinuated, not charged; so that its pertinence as an allegation is not before me,- I think the statement should be expunged.
As to costs. The complainant will pay ten dollars costs of opposing his motion to amend; and ten dollars for the defendants costs of setting aside his irregular proceedings. Also, the defendants taxed costs of opposing the motion for a receiver against them.
The defendants costs of the other two motions may be costs in the cause. And they must pay the complainant five dollars costs on expunging the scandalous matter in their affidavit.

 On this point, Mr. Clark cited against the validity of the assignment, Kirby, v. Ingersoll, Harrington’s Ch. Rep. (Mich.) 172 ; Egberts v. Wood, 3 Paige 517 ; Havens v. Hussey, 5 ibid. 30 ; and United States v. Bradley, 10 Peters’ R. Mr Fessenden in support of the assignment, cited Story on Part. 144 ; 1 Brock. Rep. 456 ; 5 Cranch 289 ; 5 Paige 30 ; 3 ibid. 523.
In the case of Deming v. Colt, in the New York Superior Court, before Judges Oakley, Vauderpoel and Sandford, October 20, 1849, it was decided that a general assignment giving no preferences, made by one partner in trust for creditors, without the assent or privity of his co-partner, who was present about the business ane! capable of acting, was void as to such co partner.

 See Greatrex v. Greatrex, 11 Lond. Jur. Rep. 1053, Dec. 7, 1847, before Sir Knight Bruce, V. C.; and Whittaker v. Hone, 3 Beavan, 388, and note to same.