Monell, J.
The conveyances of Eachel A. Addison, although voluntary, having been made prior to the debts contracted to the plaintiffs, were valid as to them. V/hatever may be the effect of a voluntary conveyance as regards creditors existing at the time the conveyance was made, it is not void as as to subsequent creditors, unless made with an actual fraudulent intention. The want of consideration is not of itself sufficient evidence of such fraudulent intent: the burthen of proving actual fraud always rests with the creditor.
In this case no -evidence of such actual fraud was offered or given, unless it is claimed that the admission of the defendants, that, at the time the conveyances were made, which was three years prior to the contraction of the plaintiff’s debt, Samuel D. Addison, the husband and grantor of Eachel A., was in debt to the amount of $75,000, was some evidence of such actual fraud. But no proof was offered or given to show that such debt exceeded his ability to pay, or that they existed when the debt to the plaintiff was contracted, both of which, it seems to me, it was necessary to show to taint the transaction with actual fraud.
The finding, therefore, that the deed to Mrs. Addison was valid, was correct, and cannot be disturbed.
The transfers to Hatfield & Marshall are attacked upon *214 two grounds : 1. The want of power in Samuel D., as the surviving member of the firm, to make the transfer ; and, 2. That they tended to hinder or delay creditors.
The last objection is easily disposed of. Hatfield & Marshall were creditors of Addison Brothers, and the transfer of the goods to them was in payment or towards payment of an existing debt. They were, therefore, purchasers for, as appears, a good and sufficient consideration. It is not alleged, nor was it proved, that the goods transferred were of greater value than the debt due. On the contrary, the answers allege that they were not sufficient to satisfy the debt. The assignment of the leases and the transfer of the residuum of the collaterals held by the Pacific Bank, were for further security and indemnity. Ho inadequacy of consideration was proven; nor was there any evidence that either of the defendants realized any thing from the assigned property beyond the amount of the debt and liability it was intended to satisfy. It seems to me, therefore, that the defendants, Hatfield & Marshall, must be regarded as purchasers for a valuable consideration, and are brought within the exception contained in section 5, of title 3, chapter 8, of part 2 of the Revised Statutes.
The remaining question deserves a somewhat more extended examination.
. The transfers to Hatfield & Marshall were made by a surviving member of the firm ; and it is claimed that inasmuch as the death of one of the partners worked a dissolution of the partnership, the functions and powers of the survivor ceased, except for the purpose of paying debts and settling the business of the firm ; and, therefore, that such survivor has no power to incur any new obligation, or contract any new debt in the name of the partnership, or give any preference in the payment of debts.
The death of Joseph Addison invested his survivor with the exclusive right of possession and management of the whole partnership property and business, for the purpose of settling and closing it up. He became trustee for all concerned in-the partnership ; for the representatives of *215 his deceased partner, for the creditors of the firm, and for himself (Case v. Abeel, 1 Paige, 393); and, having the right to collect and dispose of the property, he had the power for that purpose of assigning any chose in action or property belonging to the estate (Pars. Partn., 441; Pinckney v. Wallace, 1 Abb. Pr., 82), he was primarily liable for the debts of the firm, and could hold possession or dispose of the property to satisfy such debts ; and the representatives of his deceased partner could neither claim nor take any portion of it until after a settlement of the entire liabilities of the firm. These general principles are elementary and well established.
But it is insisted that the power of a survivor is not sufficient to authorize the giving a preference to one creditor over another.
It may be a question whether creditors at large have any such equity as entitles them to object to a transfer made in good faith, of a portion of the partnership property, to a creditor, in satisfaction of his precedent debt. It is clear, I think, that the representatives of the deceased partner could not object, and creditors have no equities except such as arise from the equities of the partners themselves, or their representatives. Before dissolution, one partner can, even without the consent of the other, apply the partnership funds to the payment of one creditor in preference to another.
And this power extends beyond the period of the partnership, and exists after dissolution, if exercised in good faith; for such act is in discharge of the duty of the partner to wind up the whole partnership concerns, and to divide the surplus among them after all • the debts are paid (Goertner v. Trustees of Canajoharie, 2 Barb., 625, 628). The only restriction upon this general power is, that before dissolution, one partner cannot, without the consent of his copartner, appoint a trustee for the partnership, by a general assignment of ■ the partnership effects for the benefit of creditors, and giving preferences. (Havens v. Hussey, 5 Paige, 30y; Kemp v. Carnley, 3 Duet, 1)
*216 But I have not found a case where, either before or after dissolution, the power to pay one creditor in preference to another has been denied. In Fox v. Hamburg (Cowp., 445), Lord Mansfield held that even after an act of bankruptcy, committed by one partner,'an assignment, bona fide, of partnership effects by the solvent partner to a creditor of the firm, in payment of his debt, was binding on the firm. And in Milliken v. Loring (37 Me., 408), the same doctrine is applied to an assignment by one partner, to a creditor, after dissolution, numerous cases uphold the power as well after as before dissolution (Egberts v. Woods, 3 Paige, 517; Mills v. Argall, 6 Id., 577; Fisher v. Murray, 1 E. D. Smith, 341; Hitchcock v. St John, 1 Hoffm. Ch., 511). In Hitchcock v. St. John (supra), Vice-Chancellor Hoffman says : “A direct payment of money or a transfer of property to an acknowledged creditor, is an admitted and a necessary power during the existence of the partnership. We are probably compelled by the authorities to go so far as to say that it is a necessary surviving power after a dissolution, in whatever way that is effected.” To the same effect is Darling v. Marsh (22 Me., 184).
In Egberts v. Wood (supra), an assignment was made by one of two surviving partners of all the debts, choses in action, and securities of the copartnership, xipon trust to pay certain prefererd creditors, and the chancellor held this language: “The legal interest in all the assigned property was in the surviving partners, and at law they alone were chargeable with all the debts of the firm. They had, therefore, the right, without the consent or concurrence of the representatives of Lusk, to appropriate the property for the payment of the debts of the- firm, in such manner, 'and by giving such preferences as they might .think proper. The decedent had no interest in the question as to what debts should be paid first, in case the partnership effects are insufficient to pay the whole, and the legal title being invested in the survivor, he alone has the right at law to determine that question.” The assignment in that case was of choses in action only, but the rule ap *217 plies as well to assignments of other personal property (Pars. Partn., 441; Rays v. Vilas, 10 Wis., 169).
It is not necessary to stretch the power of a surviving partner to sustain the transfers made in this case. The a 'Signment of the goods in store and merchandise of the firm was in payment of a j)re-existing debt due to Hatfield & Marshal], and the transfer of the leases and of the collaterals held by the Pacific Bank, were intended in part to secure these defendants against a possible loss, for which, the firm would have been held liable. The right to the property was involved in. the suits brought by creditors, and the vendor was bound to protect the title.
It will be seen, therefore, that the consideration was simple to sustain the transfers, and there is no proof of any fraudulent intent anywhere, to violate them. It is a question solely of power in a surviving member of a partnership to make a preferential transfer of the partnership property to a favorite creditor ; and I think I have abundantly shown, by numerous cases, that the power exists.
The fraudulent representations alleged to have been made by the debtors, and which induced the credit, do not seem to be urged as a reason for setting aside the conveyances or transfers. Whatever effect such representations might have had upon the contract of purchase, it is not necessary to notice. It is quite clear that they would not invalidate the title of Hatfield & Marshall.
It is probable that upon the former trial, there was evidence produced (not furnished on the second trial), which authorized the somewhat severe comments of one of the learned justices who sat upon the hearing of the first appeal (19 Abb. Pr., 169), on the fraud in fact which he supposed was established against the defendants. Upon the last trial no evidence whatever was given of any fraud in fact; but the plaintiffs relied solely upon a fraud in law, which, they claim, appears upon the face of the papers. That question I have disposed of. But, I think, that learned justice misapprehended the nature of the transfer of the goods and merchandise to Hatfield & Marshall, as he assumed it was not a sale, but an assignment as secur *218 ity for their debt. The assignment was not given in evidence, and the plaintiffs offered no proof of its contents. Each of the defendants says, in his answer, it was a sale, intended to secure to Hatfield & Marshall an indebtedness of Addison Brothers to them. The distinction, therefore, between a sale to a creditor and a transfer as security merely, if it was of any importance, cannot be taken to the prejudice of Hatfield & Marshall in this case. But whether a sale or a transfer as security for existing indebtedness, the survivor had the power to convey the choses in action and property, and the title acquired by Hatfield & Marshall cannot, in the absence of actual fraud, be disturbed by creditors of Addison Brothers.
For these reasons I think the complaint was properly dismissed, and that the judgment should, therefore, be affirmed, with costs.
Robertson, Ch. J.
This action could easily be dis posed of, if it were simply a pursuit by the plaintiffs as judgment creditors of Samuel D. Addison as their sole debtor, of his separate property into the hands of fraudulent grantees óf his.
The disposition of it would then turn entirely on the question of fraudulent intent, as matter of fact, in making the transfers assailed in this action, since there is no claim that they are void for fraud on them face. It has some of the features of such an action, because it is upon a judgment against Samuel D. Addison alone ; and if the legal ownership of the partnership effects survived to him, so that he could dispose of them as he thought proper, unchecked by any trust or duty, towards either the estate or representatives of his deceased partner, or the creditors of the firm, they would be virtually his property, capable of being reached by his individual judgment creditors.
In such case, his settlement upon his wife, of property when largely indebted, and not having means, beyond what would enable him to pay his debts, sufficient to warrant the amount of such settled property, his subsequent carrying on business with money borrowed from his fa *219 ther-in-law (Hatfield), and shifting his indebtedness from one creditor to another, his false representations to the plaintiffs of his ability to pay them, his subsequent transfer of most of his goods to his father-in-law, and in fact of all his available assets for the security of the latter, if proved to be the connecting links of one design, might be taken as evidence of an intent to defraud.
There are in this case some defects, however, in the evidence offered to prove some of those facts, and the connection of others, which interfere with such a conclusion: such • as the lapse of time between the settlement on the , wife, and the incurring of the debt to the plaintiffs : the want of proof of Ms inability to pay his debts at the date of the former, or of his indebtedness to others at the time of contracting his indebtedness to the plaintiffs. Nor was his special insolvency traced to such transfers; for which reasons probably the learned justice at special term found against any fraudulent intent, as matter of fact, in such conveyances ; with which finding there is no good ground for any interference.
But the plaintiffs introduce into this action a new element, which they claim gives them more rights than if Samuel D. Addison had been their sole debtor, and the partnership assets absolutely his property. They allege their debt to be a partnership debt of Ms, jointly with Joseph Addison, and that the transfers of the partnership assets of the firm of Addison Brothers, to the defendants Hatfield and Marshall, by Samuel D. Addison, as surviving partner, were illegal, because he had no power so to transfer them, at least for the purposes for which they were transferred ; and that, being unauthorized, such transfers were made thereby a fraud upon the estate, representatives, or creditors of Joseph Addison.
This action, however, is not merely an equitable one against the estate of Joseph Addison, as a deceased contractor, jointly with his brother, to enforce a claim which the plaintiffs have failed to collect at law against the surviving partner. If it had been intended as such, it would have been ineffectual, without the presence of some one to *220 represent such estate. But overleaping any succession to Joseph Addison’s estate, it seeks to reach that which is claimed to have been his property in the hands of his surviving partner. This cannot be done without having some one before the court entitled to represent his estate. Nor could the plaintiffs proceed to set aside transfers of Joseph Addison’s interest as fraudulent, in any event, without having some representative of his estate as a party, and the occurrence of some delay or collusion on the part of such representative: and even then they could only have such interest administered as assets in the due course of administration to pay all his debts (Bate v. Graham, 11 N. Y., 237). In that case, the plaintiffs have no preference, as they have no judgment against Joseph Addison. Even; therefore, if the ownership of neither the choses in action, nor the goods and chattels of the firm of Addison Brothers, survived to Samuel D. Addison on the death of Joseph, but the former took only an undivided moiety thereof, there is no one in the action against whom a judgment can be rendered as to the interest of Joseph. It is not a mere defect of parties, but a failure of title on the part of the plaintiffs, who can only claim through such administrator, as plaintiff or defendant.
As to the interest of Samuel D. Addison in the partnership assets, he clearly had a right to use that for any lawful purpose, and his attempt also to tranfer his brother’s interest, if he had any, does not affect the transfer of his own, any more than if it had been a stranger, who was tenant in common with him; and the plaintiffs cannot reach that interest unless the transfer of his remaining interest in the goods, and the Pacific Bank securities, was void for fraud.
I do not perceive, therefore, that it becomes important in this case, whether the ownership of the partnership assets of Addison Brothers survived-to Samuel D. Addison, or he became entitled to only a moiety thereof. In neither case were the plaintiffs entitled to any relief in this action, unless by proof of fraud other than the_ mere attempt to transfer the whole of such assets to the defendants Hat *221 field and Marshall. There is no evidence before us assailing the validity of the debt to them, or of the assignment of goods to them in payment of part. The surviving partner had a right to have secured their claim by a mortgage or pledge of all the goods, until the plaintiffs acquired some right to interfere by a lien at law or in equity. No more injury was done to the plaintiffs by the course pursued, than would have been by such mortgage. Samuel D. Addison conveyed certain goods in satisfaction of an equal amount of debt. If the consideration for the release failed by the failure of their title, of course the debt revived, or some equivalent liability was incurred, which he had a right to secure by mortgage of the Pacific Bank securities.
I, therefore, concur, in thinking that the judgment should be affirmed with costs.
Barbour, J., concurred in the opinion of Monell, J.
Judgment affirmed.